FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ NOV 21 2011 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ROBERT DINGLE JR.,
           Plaintiff

-against-

BIMBO BAKERIES,
           Defendant

1:11-cv-02879-CBA-VVP
PLAINTIFF'S AFFIDAVIT
AFFIDAVIT/AFFIRMATION
IN OPPOSITION TO
DEFENDANT'S MOTION TO
DISMISS

STATE OF NEW YORK)
           SS.
COUNTY OF KINGS

I Robert Dingle Jr. affirm the following under penalty of perjury; or being duly sworn

1. I am the plaintiff in this action, and I respectfully submit this affidavit/affirmation In opposition to the defendant's motion to dismiss, dated, August 11, 2011, made by Kristin L. Plude, esq. of Jackson Lewis LLP because:

2. I have personal knowledge of facts which bear on this motion.

3. The motion should be denied because:

1. Plaintiff's defamation claim does not violate the statute of limitations to file such claim.

2. Plaintiff did not have record of any statements nor records of the investigation Conducted by Frank Gadero, facility manager and John Ianiro facility supervisor until the conclusion of the EEOC's investigation which was concluded on March 7, 20011. In fact plaintiff had requested copies of the minutes of the disciplinary hearing he had attended as the result of and in retaliation to charges of sexual harassment he had levied against loading platform foreman Brian Lim-tom and assistant loading platform foreman Leon A. Broderick Jr. and he was told by human resources manager Rina Carpano that he was not entitled to any minutes nor the report of the investigation. Plaintiff also requested copies of the aforementioned from his union representative, Joe Wienbel

1

and he was told that he, Mr. Wienbel had no copies of anything and that he was waiting for copies from Frank Gadero. Finally after requesting them from the union president, of local 3 in November 2010.

3. Defendant's motion for dismissal of plaintiffs defamation claim must be denied, Because the statute of limitations on any tort action begins after plaintiff has knowledge that an injury or violation of rights has occurred. Subdivision 148 of 51Am Jur2d clearly states:

"An action cannot be maintained until a right of action is complete, and therefore The statute of limitations cannot run before that time."

"A claim accrues when the legal wrong or the last element essential to the cause of action occurs, or when facts come into existence that give the claimant a right to seek a remedy in the courts."

Since petitioner had no records to substantiate his defamation claim until November 2010 he is within the 1 year statute of limitation requirements,

4. Defendant's assertion that plaintiff''s petition fails to state a claim has no basis in the Law. In fact plaintiff''s' claim is supported by state and federal law. Plaintiff filed a claim of sexual harassment because a nude photo resembling him was circulated and sexual comments about the size of his penis were made to him, by Leon A. Broderick Jr. and Brian Lim-Tom, comments which were derogatory and degrading. Moreover, Leon A. Broderick was allowed to portray him as a homosexual who was violently out of control, at a disciplinary, presided over by human resources manager ,Rina Carpano, which led to a one day suspension without pay and an out of pocket expense and lost personal time (six months) for anger management based on the rantings and testimony given by Broderick.

*A hearing that violated petitioner's rights to due process of the law under the 5th and 14th amendments of the United States constitution.*

5. *Contrary to defendant's opinion plaintiffs claim is supported by state and federal rules and statutes, under Federal Rules of Civil Procedure 12(b)6;*

   *"The rule in appraising the sufficiency of a complaint for failure to state a claim under rule 12(b)6 is that a claim should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would grant him relief?"*

   *Plaintiff has both documentation and audio tape which support every claim set forth in his petition.*

   1. *Petitioner has audio of Brian Lim-Tom telling him that Leon A. Broderick was the individual who sent the photo via text message(the latter cd is being submitted as exhibit A)*

   1. *After filing a of sexual harassment complaint, there was no investigation done, no hearing was held on Lim-tom nor Broderick and instead an an investigation was held against me based on false allegations and testimony. It must be noted that a hearing such as this is a quasi-judicial proceeding. I was only notified of charges against me when I entered the hearing room, I was not allowed to confront my accusers, and they never interviewed me prior to the hearing, all of the latter infringed upon my right to equal protection of the law and due process of the law, rights protected by the 5th and 14th amendments of the United States Constitution.*

6. It must be noted that for plaintiff's complaint to be ignored and a complaint and Testimony given by Broderick, who victimized and stereotyped plaintiff and publicly degraded plaintiff also represents blatant partiality and bias, as well as gross negligence on the part of Ms. Carpano and it represents a clear abuse of authority since in a quasi-judicial proceeding she has the final say after that the only remedy can be sought in a court of law. The lack of concern and abuse of my rights by Rina Carpano, Frank Gadero and John Ianiro represents bias, negligence and prejudice and violates my right to equal protection of the law.

7. Furthermore, the latter in addition to Lim-Tom and Broderick's behavior, as well as, homosexual comments and his portrayal of petitioner as a street thug with an uncontrollable, as well as comments, made by Cecil Douglas violated my civil rights under Article 7 subd. 79-n2 of the Civil Rights law which reads:

"Any person who intentionally selects a person or property for harm or causes Damage to the property of another in whole or in substantial part because of a belief or perception regarding the race, color, national origin, ancestry, gender, religion, religious practices, age, disability, or sexual orientation of a person, regardless of whether the belief or perception is correct, shall be liable in a civil action or proceeding maintained by such individual or group of individuals, for injunctive relief, damages, or any other appropriate relief in law or equity.

8. I must also point out that Ms. Carpano and Mr. Gadero told plaintiff, "That nobody could substantiate my claim of a nude picture resembling me being circulated at the depot, I am submitting audio copies of that CD as exhibit B, for the courts review.

9, Assuming arguendo by defendant's that the audio should be inadmissible I Hereby ask that the court exercise its discretion and consider the circumstances

SEE EXHIBIT C   4
BRODERICKS STATEMENT

*By which defendant had to make the recordings to support his claims.*

*10. Finally, plaintiff's claim of sexual harassment should not be dismissed.*

*Title 7 of the Civil Rights Act of 1964 is clear with regard to plaintiff's claim of sexual harassment and I am sure that the court is fully aware of the psychological effects of sexual harassment, i.e., lack of sleep, anxiety and loss of appitite. There is also a blatant violation of The Civil Rights Act of 1964 subd2000e-2 That the environment has become very hostile, as was mentioned by plaintiff he was forced by John Ianiro and his secretary to go back and forth with a doctor's five times and then he was placed under suspension pending papers being filled out directly by plaintiff's doctor, yes plaintiff is still owed 5 weeks back pay which the company has refused to pay – they have asked me to take two weeks pay. I must also add that tools were stolen from my box on October 18th, 2011 tools were stolen from plaintiff''s tool chest plaintiff filed a grievance and reimbursement was denied. Plaintiff is also the brunt of verbal abuse by co-workers. In addition, Lim-tom and Broderick are still in the same facility and constantly encourage hostility by other employees. And in September 2011 shop foreman Cecil Douglas left under a truck that was on a lift plaintiff was working from plaintiff let the truck down and it almost fell off the lift. Cecil Douglas reported it to management and plaintiff was written up for poor work performance, although both plaintiff were at fault not even a verbal reprimand was given to Mr. Douglas.*

*Wherefore plaintiff requests that defendant's motion be denied and that the court*

*Make any other and further judgment that it deems fitting and proper pursuant to*

*Civil Rights law article 7, 79-n.2 and Federal Rules of Civil Procedure 12 b.*
                                                                    *Respectfully Submitted,*

*November 7, 2011*                                         *Robert Dingle Jr.*
                                                            [signature]

## Investigation Complaint – Robert Dingle – May 3rd, 2010:

Robert Dingle, who works at the Entenmann's Brooklyn Depot, put in a complaint to the Company claiming he was grabbed and tackled to the floor by another employee, Donald Matthews, who also works at the Brooklyn Depot. Mr. Dingle claims there was a witness present at the time.

Meeting of Entenmann's Management & Union – Present at meeting: Rena Carpano, H.R. Manager, Frank Cardaro, Brooklyn Depot Manager, Tom Leggio, Supervisor, John       , Supervisor and Joseph Weinbel, Local 3 Union Representative.

## Robert Dingle's statement:

On April 8, 2010, at 8:00 a.m., John (Supervisor) called Frank Cardaro about the incident. Frank said to start the investigation. Tom Leggio was also there at the time. He had said that Brian and him had some words. The issue was about moving the trucks and leaving the doors open. Robert claims his job is to just the lane open for the trucks. He said that Brian told him you would not talk to me that way outside. Robert said that when Donald Matthews came towards him Mark M. came between Donald and myself. He said Leon and Brian were showing pictures to the other employees in the depot. A young lady told him she saw a picture that looked like him. Robert said he seen it from a girl friend that told him about it. He said Leon, Donald and Brian were all talking and kidding and teasing him. Robert said he had some words (argument) with Tom Leggio and Donald was called in to mediate the issue. He did say that he cursed at Tom Leggio and Mark M. was a witness who was in the area when Donald ran towards Robert and Robert went towards Donald. Robert said that Donald didn't say anthing to him but ran up and tackled him to the floor. Donald was on top of him and they both got up and Donald said to him let's go outside. Donald then must have realized what he did. Donald then put his arm around him. He knew what he did. Robert said if he knew that Donald was going to get fired he would never have called the cops. He said he would not have a problem with Donald coming back to the depot. He has a problem with his pay.

Rena Carpona asked him if he has a problem with his anger and Robert said no. He felt that the investigation was leading towards himself. Rena brought up about issues he had with other people like Tai Lang, Veronica and Tom Leggio. She also brought up about a complaint from Tai Lange that Robert was cursing at him.

## Statement by Leon B:

Leon said he did not see anything between Donald and Robert fighting with each other. Rena asked Leon about the picture that was being showed around. Leon said that the first time he saw the picture was from Robert Dingle. Robert showed him a picture saying you like men and dick and had said that Leon was the one who sent it to Siso who is another employee at the Depot. Leon said he approached Siso about the picture he sent to him. Siso denied getting anything from Leon. Leon said he didn't send any pictures to anyone and he never made fun of Robert Dingle. He didn't discuss the picture with anyone. He said Frank Cardaro (the supervisor) even had a problem with Robert about his pay. The discussion was getting out of hand and Frank threw him out of his office.

## Statement by Brian:

Brian was asked about the picture that was going around the depot of Robert Dingle. Brian said he first saw the picture from Robert and Mark M and they were talking about the picture that was on the internet.