UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ROBERT DINGLE JR.,

                     Plaintiff,

   -against-

BIMBO BAKERIES,

                    Defendant.
------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
11-CV-2879 (CBA) (VVP)

AMON, Chief United States District Judge:

      Pro se plaintiff Robert Dingle Jr. brings this action against his employer, Bimbo Bakeries, asserting claims for sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*, as well as a state law claim for defamation. Bimbo Bakeries moves to dismiss the plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the following reasons, the motion is granted.

## BACKGROUND

      The following facts are alleged either in the plaintiff's complaint or in the affidavit he submitted in opposition to the plaintiff's motion to dismiss. See Cusamano v. Sobek, 604 F. Supp. 2d 416, 461 (N.D.N.Y. 2009) ("[T]he mandate to read the papers of pro se litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint."). The Court takes these allegations as true at the motion to dismiss stage.

      The plaintiff, a 51-year old African American male, has been employed by the defendant as a mechanic at the Brooklyn Depot since December 2008. (Compl. at 10.) He alleges that

throughout the month of March 2010 two loading platform foremen at the Brooklyn Depot, Brian Lim-Tom and Leon Broderick, Jr., "distributed and displayed a photo of a nude black male resembling the Plaintiff." (Id. at 5.) The plaintiff alleges: "While this was not a picture of me, they did show it to other coworkers, claim it was me, and make derogatory comments about me based on this naked picture." (Id. at 10.) The plaintiff states that he begged his co-workers to stop displaying and distributing the photograph, but they "continued to display and distribute the photo to other employees and make sexually explicit and derogatory statements about the plaintiff." (Id. at 5.) The plaintiff does not describe the "derogatory comments" that were made by his co-workers, except to state in his papers that they included "sexual comments about the size of [the plaintiff's] penis," (Pl.'s Aff. at 2), comments that portrayed the plaintiff "as a pervert and a homosexual," (Compl. at 6), and comments that "portray[ed] the Plaintiff as a person who is belligerent and violently out of control." (Id.)

The plaintiff claims that the "ongoing sexual harassment" by his co-workers created a hostile work environment. He emphasizes another incident in which he was "physically assaulted by a coworker, Donald Matthews, because of the negative opinion of me this sexual harassment created." (Compl. at 10.) According to the complaint, the incident with Matthews began as a verbal altercation and resulted in Matthews tackling the plaintiff on top of a desk in the mechanics office. (Id. at 5.)

After the incident with Matthews, the plaintiff "complained to supervisors John Iano and Frank Gadero about the ongoing sexual harassment." (Id. at 10.) The plaintiff concedes that his employer initiated some sort of investigation into the charges, which included interviewing five employees at the Brooklyn Depot. (Id. at 5.) According to the complaint, the plaintiff's supervisors, Area Plant Manager Frank Gadero and Human Resources Manager Rina Carpano,

"both assessed that no one could substantiate allegations of sexual harassment." (Id. at 5.) The plaintiff alleges on one hand that there "wasn't a hearing held against Broderick or Lim-Tom," but on the other hand notes that "they were both suspended with pay for a week." (Id. at 6.)

As to the incident with Matthews, the plaintiff alleges that Carpano held a hearing on May 3, 2010. (Pl. Aff. at 2.) The plaintiff seems to suggest that the hearing improperly turned into an investigation into the plaintiff's own role in the incident, rather than Matthews' behavior. (Id. at 3.) According to the plaintiff, Broderick was permitted at the hearing "to portray [the plaintiff] as a homosexual who was violently out of control," (Pl. Aff. at 2), in part by stating that the plaintiff showed him (Broderick) the photo and made homosexual comments to him. (Compl. at 6.) However, at the conclusion of the hearing, Matthews was fired for his role in the altercation. (Compl. at 5.) The plaintiff, in turn, was suspended for one day without pay and forced to pay for and take anger management classes. (Id. at 6.) The plaintiff alleges that his suspension and the accusations that he had anger issues constituted "retaliation from management" and were "based in part on the false allegations of my harassers." (Id. at 11.)

The plaintiff alleges that another instance of retaliation occurred when the plaintiff left work for several months on disability (for reasons unknown). (Id. at 7.) The plaintiff alleges that when he attempted to return to work with a letter from his doctor, the letter was not accepted. (Id.) The plaintiff allegedly was forced to return to the doctor several times over a period of five weeks to fill out more forms, which delayed his return to work and resulted in five weeks' lost wages. (Id.) According to the plaintiff, no other employees returning from disability were "put through such an ordeal to return to work." (Id.) The plaintiff also alleges that his employer has retaliated against him by denying reimbursement when the plaintiff filed a grievance that his tools were stolen, and by writing him up for poor work performance based on

3

an error caused by somebody else. (Pl. Aff. at 5.) Finally, he asserts that Broderick and Lim-Tom still work in his facility and encourage hostility and harassment by other employees. (Id.) The plaintiff continues to work for the defendant.

The plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on December 7, 2010, and received a right to sue notice on March 17, 2011. He filed his complaint in this action on June 14, 2011.

## STANDARD OF REVIEW

"When a Court reviews a motion to dismiss for failure to state a claim for which relief can be granted, it must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff." Lax v. 29 Woodmere Blvd. Owners, Inc., 812 F. Supp. 2d 228, 232 (E.D.N.Y. 2011). To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), "[a] plaint must allege 'enough facts to state a claim for relief that is plausible on its face.'" Smith v. Westchester Cty., 769 F. Supp. 2d 448, 460 (S.D.N.Y. 2011) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Pro se pleadings "must be read liberally and should be interpreted to raise the strongest arguments that they may suggest," Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (internal quotation marks omitted). Nevertheless, pro se complaints remain, as any other complaint, vulnerable to dismissal under Rule 12(b)(6). See Brickhouse v. City of N.Y., 2010 WL 3341845, at *2 (S.D.N.Y. 2010) ("Pro se plaintiffs nevertheless remain subject to the general standard applicable to all civil complaints[.]").

## DISCUSSION

Liberally construed, the Court interprets the plaintiff's complaint as asserting the following federal claims: (1) a Title VII hostile work environment claim premised on the

4

allegations that his co-workers sexually harassed him; (2) a Title VII retaliation claim premised on the allegations that his employer did not adequately address his complaints of sexual harassment, but instead retaliated against him when he raised those complaints.

### 1. Hostile work environment

Although the plaintiff's complaint asserts a claim for sex discrimination, it is best construed as a hostile work environment claim based on the sexual harassment of the plaintiff at the hands of his male co-workers. "A hostile work environment claim requires a showing (1) that the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and (2) that a specific basis exists for imputing the objectionable conduct to the employer." Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002) (quoting Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997)). "This test has objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." Id. (Harris v. Forklist Sys., Inc., 510 U.S. 17, 21 (1993)).

This "fundamental analysis is no different in the same-sex sexual harassment context." Tepperwien v. Entergy Nuclean Operations, Inc., 606 F. Supp. 2d 427, 438 (S.D.N.Y. 2009); The Supreme Court held in Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75 (1998) that "nothing in Title VII necessary bars a claim of discrimination 'because of . . . sex' merely because the plaintiff and the defendant (or the person charged with acting on behalf of the defendant) are of the same sex." Id. at 79. "Oncale did not suggest however, that male harassment of other males always violates Title VII. Oncale emphasized that every victim of such harassment must show that he was harassed *because he was male.*" Simonton v. Runyon,

5

232 F.3d 33, 36 (2d Cir. 2000) (emphasis in original) (citing <u>Oncale</u>, 523 U.S. at 80-81); <u>see also</u> <u>Alfanso</u>, 294 F.3d at 373 ("[I]t is 'axiomatic' that in order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of [his or] her sex.") (quoting <u>Brown v. Henderson</u>, 257 F.3d 246, 252 (2d Cir. 2001)).

In <u>Oncale</u>, the Supreme Court noted that "[c]ourts and juries have found the inference of discrimination easy to draw in most male-female sexual harassment situations, because the challenged conduct typically involves explicit or implicit proposal of sexual activity" and "it is reasonable to assume those proposals would not have been made to someone of the same sex." 523 U.S. at 80. Where, like here, a male plaintiff alleges that he was harassed by his male coworkers, "similar inferences about a harasser's motivations may not be considered reasonable." <u>Borski v. Staten Island Rapid Transit</u>, 2006 WL 3681142, at *2 (E.D.N.Y. 2006). (citing <u>Oncale</u>, 523 U.S. at 81). However, the Supreme Court in <u>Oncale</u> described three ways in which a male plaintiff could show that he was harassed by male coworkers because of his sex: (1) by providing "credible evidence that the harasser was homosexual" (and therefore motivated by sexual desire); (2) by demonstrating that "the harasser is motivated by general hostility to the presence of [men] in the workplace"; or (3) by "offer[ing] direct comparative evidence" showing that the alleged harasser treated members of the sexes differently in a mixed-sex workplace. <u>Id.</u> at 80-81. "Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted 'discrimination because of sex.'" 523 U.S. at 81. Although a plaintiff need not satisfy this burden at the motion to dismiss stage, a male plaintiff alleging same-sex harassment, like any Title VII plaintiff, "must still allege enough facts to plausibly plead his

harasser's homosexuality or 'gender-based animus.'" Argeropoulos v. Exide Tech., 2009 WL 2132443, at * 3 (E.D.N.Y. 2009).

Taking all the factual allegations in the complaint as true, and drawing all inferences in favor of the plaintiff, the Court finds the plaintiff has not alleged facts that plausibly suggest his co-workers harassed him *because he is male*. The complaint alleges no facts to suggest that any of his identified harassers, Lim-Tom, Broderick, or Matthews, is homosexual. To the contrary, the plaintiff emphasizes that one of his harassers allegedly degraded the plaintiff by portraying him as homosexual.[1] The plaintiff does not allege any facts suggesting that any of his co-workers have a gender-based animus towards men in the workplace. Rather, the plaintiff alleges that his harassers are a group of men who singled out only the plaintiff, and no other men, for harassment. Nor does the plaintiff allege facts suggesting that the harassers discriminated between men and women. Indeed, the complaint makes no reference to how the plaintiff's harassers treated anyone other than the plaintiff.

The fact that the harassment suffered by the plaintiff was sexual in nature (i.e. involved nude photos and comments about the size of the plaintiff's genitalia) does not make it gender-based discrimination. Oncale, 523 U.S. at 80 ("We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations."). In Borski v. Staten Island Rapid Transit, the plaintiff alleged that his male supervisor circulated sexually explicit, vile, and derogatory materials at the office, including sexual cartoons, sexual advertisements for DVD and

---

[1] The plaintiff alleges that his co-workers actions and comments caused him to be "portrayed as a pervert and a homosexual." (Compl. at 6.) This allegation could be construed as alleging a hostile work environment claim based on the plaintiff's perceived sexual orientation. It is well-established, however, that "Title VII does not prohibit harassment or discrimination because of sexual orientation." Dawson v. Bumble & Bumble, 398 F.3d 211, 217 (2d Cir. 2005). This includes claims based upon perceived sexual orientation. Argeropoulos v. Exide Tech., 2009 WL 2132443, at * 3 (E.D.N.Y. 2009). Thus, the plaintiff does not have a claim for relief under Title VII based on his co-workers comments about his sexuality.

phone services, and magazine photos altered to portray enlarged body parts. 2006 WL 3681142, at *1. The materials included "cartoons mak[ing] fun of the way that [the plaintiff] dresses, including some that insinuate he wears women's clothes" and others "that appear to be mocking [the plaintiff] for being stupid, lazy and an office gossip." Id. The district court granted the defendant's motion to dismiss the plaintiff's complaint in Borski, holding that these allegations "at best, establish[ed] personal animus against [the plaintiff] by his co-workers and supervisors and not gender-based animus against men or animus towards [the plaintiff] because he is a man." Id. at *3.

Like in Borski, the factual allegations in the complaint establish, at best, that Lin-Tom and Broderick had a personal animus against the plaintiff. They do not tend to show any animus towards men generally, or towards the plaintiff because he is a man. Although this Court is not insensitive to the unpleasant environment that the plaintiff has been subjected to at his workplace, Title VII "does not set forth 'a general civility code for the American workplace.'" Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (quoting Oncale, 523 U.S. at 80). Rather, it provides an avenue for relief from mistreatment based on gender and other protected characteristics. See Krasner v. HSH Nordbank AG, 680 F. Supp. 2d 502, 519 (S.D.N.Y. 2010) (finding that "although [the plaintiff's] work environment may have been unpleasant—even 'hostile' in ordinary parlance—his discrimination claim must be dismissed because the circumstances do not permit an inference that 'he was singled out for mistreatment because of [his] sex'"). The plaintiff has failed to allege facts suggesting that he was harassed because of his gender, and thus his Title VII claim must be dismissed.

8

## 2. Retaliation

The plaintiff alleges that his employer retaliated against him after he complained that he was being sexually harassed by his coworkers. "To state a claim for retaliation in violation of Title VII, a plaintiff must plead facts that would tend to show that: (1) [he] participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging [him]; and (3) there exists a causal connection between the protected activity and the adverse action." Patane v. Clark, 508 F.3d 106, 115 (2d Cir. 2007); see also Regan v. Benchmark Co., 2012 WL 692056 (S.D.N.Y. 2012) ("Plaintiff must plead facts sufficient to render her retaliation claims facially plausible under Twombly and Iqbal").

As to the first element, the plaintiff argues that he engaged in protected activity by reporting the harassment he was suffering at the hands of his coworkers. The defendant argues in response that because the plaintiff did not complain to his supervisors that he was discriminated on the basis of his sex (or on the basis of his membership in any other class protected by Title VII), he did not oppose an unlawful employment practice under Title VII and therefore was not engaged in protected activity.

"To prove that his complaints of a hostile work environment were a protected activity, Plaintiff is not required to establish that the conduct complained of actually amounted to a violation of Title VII." Drummond v. IPC Intern., Inc., 400 F. Supp. 2d 521, 534 (E.D.N.Y. 2005). However, to satisfy this element of a retaliation claim, a plaintiff must at least "demonstrate a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." Manoharan v. Columbia Univ. Coll. Of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir. 1988); see Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002)). As discussed herein, the Court finds that the plaintiff has alleged no facts that would permit a

reasonable inference that he was harassed by his coworkers because of his gender, rather than based on a personal animus.  Accordingly, he could not have reasonably believed that the conduct he was complaining of violated Title VII, and therefore he has not adequately alleged that he was engaged in protected activity.  See La Grande v. DeCrescente Distributing Co., 370 Fed. App'x 206, 212 (2d Cir. 2010) (holding that the plaintiff could "not predicate a retaliation claim on his complaints that he himself was discriminated against on the basis of sex, since there was no reasonable basis for such complaints"); Drummond, 400 F. Supp. 2d at 523 ("[I] is inherent in the definition of a sex-based hostile work environment that the conduct occurred because of one's sex. Because Plaintiff has introduced no evidence that he was subjected to the alleged hostility because of his gender . . . he could not have reasonably believed that [the] alleged conduct violated Title VII.").

     The Court also finds that the plaintiff has failed to plead facts that tend to show a causal link between his complaints and any adverse employment action.  The primary retaliatory conduct alleged by the plaintiff is that his employer suspended him for one day, accused him of having anger issues, and required him to take anger management courses.  However, the plaintiff's own complaint alleges that this action was taken after the plaintiff "had words with Matthews because the Plaintiff had refused to obey orders given by Lim-Tom," and after his employer had a hearing at which the plaintiff was described as "belligerent and violently out of control."  (Compl. at 5-6.)  No other facts alleged in the plaintiff's complaint give rise to a plausible inference that the plaintiff was suspended because he complained about harassment, rather than because he got into a fight with a coworker.

     The other primary instance of retaliation described in the complaint is asserted in vague and conclusory terms, and the Court finds it difficult to discern exactly what the plaintiff alleges

10

occurred. The plaintiff describes an instance where "the Plaintiff was attempting to return to work after several months of disability" and arrived at work with a letter from his doctor that "was not accepted by the secretary Lisa." He alleges that he was required to return to the doctor on several occasions before being permitted to return to work five weeks later, an ordeal that no other employees returning to work from disability have had to go through. The plaintiff does not allege when this occurred. He does not allege that anyone who knew about his harassment complaint was involved in this incident, and he does not allege any fact that would tend to show a causal link between this incident and his complaint of harassment.

     Finally, the plaintiff makes two additional allegations of retaliation in his affidavit submitted in opposition to the defendant's motion to dismiss. He states, without any further explanation, that "on October 18, 2011, tools were stolen from plaintiff's tool chest" and that "plaintiff filed a grievance and reimbursement was denied." (Pl. Aff. at 5.) He also refers to an incident where the plaintiff was written up for poor work performance based on an error that he and another person caused, emphasizing that the other person involved was not given any kind of reprimand. (Pl. Aff. at 5.) These conclusory allegations that his employer has continued to retaliate against him, without any facts tending to show a causal link between these events and the plaintiff's complaints of harassment, are insufficient to state a claim for retaliation.

     The Court grants the defendant's motion to dismiss the plaintiff's retaliation claim on the grounds that the plaintiff has failed to allege facts sufficient to show (1) that he was engaged in protected activity when he complained about harassment at the workplace; or (2) a causal connection between the alleged protected activity and the adverse action.

**3. State law claims**

The plaintiff asserts a defamation claim against the defendant, alleging that the statements made by his co-workers in connection with circulation of the nude photo defamed his character. In addition, although the plaintiff's complaint does not expressly state a claim for discrimination under state law, the plaintiff argues in opposition to the defendant's motion to dismiss that the defendant's conduct violated his civil rights under N.Y. Civ. Rights Law § 79-n2, suggesting that the plaintiff may have intended to assert a claim for violation of that statute. Having dismissed the federal claims over which this Court would have original jurisdiction, the Court declines to exercise supplemental jurisdiction over these state law claims. The Court notes, however, that the plaintiff's defamation claim appears to be barred by New York's one-year statute of limitations, as the allegedly defamatory comments were made in March 2010 and the plaintiff did not file his complaint until June 14, 2011. See Biomed Pharmaceuticals, Inc. v. Oxford Health Plans (N.Y.), Inc., 775 F. Supp. 2d 730, 738 (S.D.N.Y. 2011).

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss the plaintiff's complaint is granted. However, when evaluating a pro se complaint, "a district court should not dismiss without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" Valle v. Micro Research Technologies, 2010 WL 3958433, at *4 (E.D.N.Y. 2010) (quoting Thompson v. Carter, 284 F.3d 411, 419 (2d Cir. 2002)). The Court is doubtful that the plaintiff could amend his complaint to correct insufficiencies identified in this order. However, there is language in the plaintiff's complaint suggesting that the plaintiff may not have described each of the allegedly harassing interactions that he had with his co-workers during the month of March 2010. Thus, in an abundance of

12

caution, the Court grants the plaintiff leave to amend his complaint to correct the deficiencies in his Title VII claim. If the plaintiff chooses to file an amended complaint, he shall do so within thirty (30) days of the date of this Order. The amended complaint must be captioned "Amended Complaint" and shall bear the same docket number as this order. If no amended complaint is filed, the Court will enter judgment accordingly.

SO ORDERED.

Dated: Brooklyn, New York
      July 11, 2012

                          /s/
                      Carol Bagley Amon
                      Chief United States District Judge