UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

ROBERT DINGLE, JR

                      Plaintiff,

    -against-                                  1:11-cv-02879-CBA-VVP

BIMBO BAKERIES USA

                      Defendant

-----------------------------------------------------------------X

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## PRELIMINARY STATEMENT

Plaintiff has come before the court seeking relief for violations of his Constitutional Rights to Due Process of the Law and Equal Protection of the law protected by the 5th and 14th amendments of the United States Constitution. Plaintiff also seeks relief pursuant to Section 8 of the National Labor Relations Act, the 19th Century Civil Rights act, amended in 1993, Labor Law, and the Civil Rights Act of 1964, Title VII and Tort law. Plaintiff further seeks relief under the Code of New York Legal Ethics Section 3 and the New York State Bar Association rule 3.3 (Candor of the Tribunal).

## Summary of Argument

Plaintiff has come before the court seeking relief as a matter of law. Contrary to counsel for defendant's assertions plaintiffs complaint does state a claim for which relief should and must be granted as a matter of law. Plaintiff's amended complaint does state a claim pursuant to title VII especially with regard to retaliation on the part of defendants. Plaintiff's complaint should not be dismissed as he participated in protected activity, adverse action emanated therefrom which gave rise to other discriminatory (disparate) treatment and a hostile environment for which defendants are liable. Moreover, plaintiff's amended complaint should not be dismissed as he has given counsel for defendant's a clear, concise and fair notice of his claims thereby satisfying Federal Rules of Civil Procedure 8(a)(2) as well as Tort law. Counsel for the defendant's and defendants have done everything possible to thwart this process and have made no attempts to rectify or correct the wrongs that have been done and that is why this matter is before the court today. Even after the matter was before the court defendants have continued to harass plaintiff and showed a total disregard for plaintiff's rights as a human being and a United States citizen and finally the loss of income (unemployment).

I wish to point out that the union has recognized and asserted to the company's management that the barrage of bogus write ups and the consistent harassment resulted from plaintiff's complaint of sexual harassment. I must also point out that as the result of harassment the braking system on a company truck was completely disabled (tampered with) which could have caused death and or serious physical injury to plaintiff and co-workers.

I should also point out that counsel for defendants in their motion to dismiss have consistently twisted facts and concealed information, i.e., they have constantly concealed and continue to conceal the fact that there is audio, (which they have listened to) wherein their client has stated that nobody could substantiate plaintiff's claim that Lim-tom, Broderick and Douglas all admitted to having knowledge of the photo (which bought on these issues). Nothing was done about it which violates plaintiff's due process rights and violated property interests. It is also clear from the record that human resource manager, Rina Carpano and Depot manager Frank Gadero not only held an investigation without the presence of the union in violation of the collective bargaining agreement and withheld the results thereof from plaintiff and the union until after the EEOC had reviewed the case over a year later, all of which violates the New York State Bar Association rules and the New York code of ethics. For counsel to assert that there was no wrong doing while concealing pertinent information is not only absurd but it is insensitive, inhumane and barbaric. In the preceding paragraphs and pages plaintiff will address counsels claims and assertions and I pray that the court read this opposition and consider all of the evidence and the facts that plaintiff has set forth as none of the things happened by coincidence or mistake, they were intentional.

## PLAINTIFF'S AMMENDED COMPLAINT

## DOES SURVIVE DEFENDANT'S MOTION TO DISMISS

Pursuant to rule 12(B)6 and the standard of rule8(A)(2) of the Federal Rules of procedure the court has pointed out that; "A complaint should only be dismissed if it appears beyond doubt that a plaintiff can prove no set of facts in support of his claim, Travis Marshall V. William Downey and Donald Lamenque 2010 U.S. Dist. Ct Eastern District Lexis 137178. In deciding a defendant's motion to dismiss the court must accept as true all the factual allegations in the inference in favor of the plaintiff. When determining the sufficiency of plaintiff's claim under rule 12(b)(6) consideration is limited to the factual allegations in plaintiff's amended complaint, to documents attached to the complaint as an exhibit or incorporated in it by reference and to matters which judicial notice may be taken, (Marshall V. Downey & Lamenque)." In the instant case plaintiff has submitted documents to support his claim under Title VII. Moreover, the United States Court of Appeals has interpreted Federal Rules of Civil Procedure 8(a)(2), as follows: " A complaint need only contain a short and plain statement of the claim showing that the pleader is entitled to relief." (Svierkiewicz 534 US 506 (2 Cir 2000). In Benjamin V. New York City Department of Health, Benjamin 2005 US APP (2 Cir 2005) the court ruled that as long as a complaint gives the defendant a fair notice of the basic elements of his claim, it could survive a motion to dismiss. The court gave plaintiff an opportunity to file an amended complaint because, as the court stated, there were certain aspects of the original complaint that were unclear. Plaintiff restructured the entire complaint and submitted supporting documents to support his allegations and therefore his complaint should not be dismissed. Finally, the court has also ruled that a Motion to Dismiss pursuant to rule 12(B)(6) only challenges the sufficiency of the statements in the complaint. The court went on to say, "A ProSe complaint, however, in artfully pleaded must be held to less stringent standards than formal pleadings drafted by lawyers. A court must read the pleadings of a ProSe plaintiff liberally and interpret them to raise the strongest arguments that they suggest." To dismiss plaintiff's complaint would constitute an abuse of discretion, especially if the court dismisses the complaint with prejudice as counsel for defendants have requested. The United States Court of Appeals for the second court has held: "A district court abuses its discretion when its decisions rests on errors of law (such as application of the wrong legal principle) or a clearly erroneous factual finding or its decision – though not necessarily the product of a legal error or a clearly erroneous factual finding – cannot be located within the range of permissible decisions," Wynder V. McMahon 2004 U.S. App. 3906 (2 Cir 2004). The court went on to point out that, dismissal on pleading standards is unauthorized by Fed Rules of Civ. Proc. 8. Many of the issues raised by counsel for defendants are for the trier of fact and therefore, should be raised at trial, since defendants nor their attorneys feel no need or are unwilling to offer a settlement. Plaintiffs complaint is plausible on its face and it satisfies the requirements of rule 8 in that his complaint alleges acts of discrimination and retaliation and, as a result, a hostile work environment and each defendant is tied to one or more of the allegations, see Wynder. Counsel for defendants did not claim that the complaint did not give them notice of the

1

substance of his claims. Plaintiff's complaint is not confused or confusing; it is not ambiguous nor vague nor otherwise, unintelligible so as to warrant a dismissal under rule 8. "The requirement under rule 8 is whether or not adequate notice has been given". The rule is fashioned in the interest of fair and reasonable notice, not technicality. Fair notice is defined as that which will enable the adverse party to answer and prepare for trial. Fair notice is judged by whether the complaint enables the defendant to prepare for trial", Wynder. In the instant case plaintiff has gone far above and beyond the pleading standard of rule 8.

### PLAINTIFF IS ENTITLED TO RELIEF UNDER

### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

First I would like to point out that the company has a policy for sexual harassment and their policy is predicated upon Title VII and they interpret title VII and the company policy so as to protect all of its employees from sexual harassment, whether they are male or female. Plaintiff firmly asserts that legislative intent concerning Title VII to be so rigid as to bar a male plaintiff from raising a sexual harassment claim where the terms of company policy are clear and concise with regard and the company has acknowledged sexual harassment and held an investigation pursuant to title VII and the evidence is overwhelming to support plaintiff's claim. Since the behavior of defendants was retaliatory, discriminatory and created a hostile environment, thereby, producing adverse action and adverse results then plaintiff's claims should be entertained under title VII so as not to minimize or mitigate the intent of congress and allow the defendants to violate the law, plaintiff's rights and be free to carry out the same unlawful, despicable acts on somebody else. In the instant case, plaintiff raises the issue of sexual harassment for which he filed a formal complaint in accordance with company rules and policies against, Brian Lim-Tom and Leon Broderick. An investigation was held in the absence of a Union representative in violation of the Collective Bargaining Agreement (see exhibit A attached hereto). The defendants also failed to resolve the issue within four days as prescribed in the Collective Bargaining Agreement, exhibit A, which gave Lim-Tom and Broderick time to coordinate their stories, and to concoct lies which they later used to influence management. It also gave them time to solicit support and have at least three other people corroborate or substantiate their stories. Stories they concocted diverted the focus of the entire investigation, which influenced depot manager Frank Gadero, and depot supervisor John Ianiro (Ianiro was Lim-tom and Broderick's immediate supervisor at the time). In short, Gadero and Ianiro allowed Lim-Tom and Broderick to give a character assessment against plaintiff, after he complained about Lim-Tom and Broderick displaying a nude photo resembling plaintiff, sending it to several co-workers at the Brooklyn Depot via text message. Lim-tom, Broderick and Donald Matthews all antagonized and degraded plaintiff. In addition Lim-tom and Broderick made wild, farfetched and defaming statements about plaintiff, those statements were turned in as exhibits attached to plaintiff's amended complaint. Plaintiff's immediate supervisor, foreman Cecil Douglas admitted to plaintiff that Lim-tom had texted him

the photo. Plaintiff appealed to Douglas to come forth and tell the truth about the photo, Douglas refused, stating that he did not want to get involved. Although as a foreman and employee he is obligated to report such incidents in accordance with company rules, in a truthful manner. Instead, during Gadero's investigation, Douglas went in and admitted having the photo texted to his phone but in defense of Lim-Tom, claimed that he could not remember who had sent the photo, and went on to butt rest Lim-tom and Brodericks lies which portrayed plaintiff as an individual who is psychologically and emotionally out of control. I must also mention management divulged personal and confidential information regarding plaintiff's personal records which included a 30+ year old arrest record. This caused co-workers to depict the plaintiff as violent and hot tempered. They also spread rumors that plaintiff was incarcerated for murder which was untrue. The ideas were espoused by Lim-tom and Broderick and were promoted by Gadero, Ianiro and Rina Carpano. These ideas were thoroughly embraced and instead of analyzing the statements of Lim-Tom and Broderick, in an intelligent and impartial manner, Rina Carpano went on to ignore plaintiff's sexual harassment complaint, she rendered a decision and accused plaintiff of having an anger problem. At which point the plaintiff was suspended for one day without pay and compelled to attend anger management for one year, as a condition of employment, for which plaintiff paid out of pocket. Neither Lim-Tom nor Broderick were punished and the hearing minutes along with Gadero's investigation results were concealed. Plaintiff wrote Carpano numerous letters asking her why he was punished after lodging a sexual harassment complaint against Lim-tom and Broderick and forced to attend anger management. Carpano stated that plaintiff was punished because Lim-tom, and Broderick offered statements about plaintiff having had three arguments with three different employees out of more than one hundred employees. Carpano also claimed she rendered her decision because plaintiff defended himself against co-worker, Donald Matthews, who tackled plaintiff on top of the mechanics office desk. For two years after the incident plaintiff was antagonized, from time to time by Lim-Tom, Broderick and several other employees at the depot. Periodically Douglas and Ianiro would call the head fleet service manager, Pete Villa and lie about plaintiff making mistakes and on at least two occasions plaintiff received bogus disciplinary write-ups. Plaintiff constantly humbled himself, while accepting abuse from co-workers. During the two years following the sexual harassment complaint Douglas and co-worker Ingrid Prail would tell new employees that plaintiff had a bad temper and instructed them avoid management seeing them socializing with plaintiff because they would think they were his friend and they would bring problems on themselves. Plaintiff filed numerous complaints with the company's complaint hotline and the with the Union against Ianiro, Douglas and fleet supervisor, Tom Leggio for abuse of authority and failing to resolve issues.

3

VIOLATION OF PLAINTIFFS RIGHTS PURSUANT

TO TITLE VII and DEFENDANTS LIABILITY

It has been the position of this court that to substantiate a claim of same sex sexual harassment, between two men that a plaintiff must prove that his harasser(s) were gay. While plaintiff cannot offer such proof, it must be pointed out that it is highly unlikely that heterosexual men would keep and distribute photos of other nude men. It is however the policy and position of the company in the instant case, the behavior of Lim-Tom and Broderick did constitute and violate the existing policy against sexual harassment, which is premised in title VII. Since the company has a policy against sexual harassment, petitioner is requesting that the court rule on the case, giving consideration to existing agency principles, Civil Rights 27, Mouris V. Bellevue Hospital Center 2012 US DIST. LEXIS 168076, (2012).

Plaintiff filed a complaint of sexual harassment based on company policy with, then manager, Frank Gadero, who also included then, route supervisor John Ianiro. Gadero and Ianiro investigated the incident and along with Rina Carpano concealed the results. It must be mentioned here that Lim-Tom and Broderick were suspended with pay. Counsel for the defendant's in response to the EEOC's investigation claimed that Broderick and Lim-Tom were suspended without pay and according to Charles Diamond, agent with the EEOC, said they failed to find prejudice. The defendant's violated title VII in that they failed to divulge the results of the investigation and turn over copies of same to the Union. Defendant's made no effort to discipline neither Lim-Tom nor Broderick, and in a recording already submitted to the court, Rina Carpano claimed that, "nobody substantiated plaintiff's claims." Defendants are liable because they did not take reasonable steps to address plaintiffs complaint, thus they did not exercise reasonable care. Under title VII an employer is liable for sexual harassment but also liable for creating a hostile environment and for violating agency principles, Faragher V. City of Boca Raton 524 US 775, 118 SCT 2275. Moreover, defendants are liable because the latter also caused discrimination in the terms and conditions of employment.

DEFENDANTS ARE LIABLE BECAUSE PLAINTIFF

PARTICIPATED IN PROTECTED ACTIVITY

Contrary to counsel's opinion, defendants are also liable because plaintiff was involved in protected activity by making a complaint about improper and illegal employment activity. After doing so petitioner was subjected to adverse action such as disparate treatment with regard to disciplinary actions for bogus infractions, Austin V. Ford Models Inc., 609 F3d 537 (2 Cir 2000), and therefore suffered adverse employment actions for at least two years. It must also be considered that the adverse actions of management also included disparate treatment with regard to the enforcement of unwritten rules, e.g. punished for working in an area where other mechanics work.

4

Disparate treatment is intentional discrimination which is also prohibited by title VII and it alters the terms and conditions of employment. Counsel for defendants assert that there is no legal recourse for discriminate use of rules and regulations, however, the latter is a direct violation of equal protection of the law under the 5th amendment of the U.S. Constitution.

## CAUSAL CONNECTION

Counsel for defendant asserts, there is no causal connection between the protected activities, which is unfounded. The mere fact that plaintiff was suspended without pay after making a complaint about Lim-Tom and Broderick, in and of itself establishes causal connection. From the aforementioned time plaintiff was harassed and subjected to a hostile work environment and the harassment did not stop until August of 2012, when Douglas, who used previously concocted theories about plaintiff being threatening. Douglas himself had harassed plaintiff for over two years, resulting in plaintiff being fired, stating that he felt threatened by plaintiff. Counsel for defendants contend that the two years of retaliatory behavior constitutes, "matters outside of the pleadings", however, these matters can be submitted as background evidence and considered by the court even if they are outside of the statute of limitations, Jute V. Hamilton Sundstrand Corp. 420 F3d 166 (2 Cir 2005). Since the protected activity was followed closely by discriminatory/retaliatory treatment and it was ongoing and it did not further nor enhance employment or business goals, causal connection has been established, Decintio V. Westchester County Medical Center 821 F2d 111 (2 Cir 1980) retaliation. Title VII prohibits retaliation against an employee because he made a charge, testified, assisted or participated in any manner in an investigation or hearing under title VII or opposed any practice made an unlawful practice by title VII, section 2000 e-3a. Moreover, because Lim-Tom, Broderick and Douglas imputed their discriminatory animus to management who ultimately made adverse decisions, defendants are liable, Staub V. Proctor Hospital 2011 US Lexis 1900, under the cat's paw theory, regarding title VII. It must be noted that the primary motives for Broderick, Lim-Tom and Douglas' hostile, degrading and retaliatory activities and remarks was to cause harm and adversity. "Under traditional tort law intent denotes that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to occur," Staub V. Proctor Hospital 2011 US Lexis 1900 (US Supreme Court 2011). The company did nothing to defuse the situation despite numerous and extensive complaints by plaintiff and therefore they are liable, Dietz V. RR Donelly and Sons Co, 70 Fair Empl. Prac. Cas. BNA 1421 (1996), 45 Bam Jur. 2d Job Discrimination S853. Finally, since Douglas was plaintiff's immediate supervisor and since Douglas' treatment of plaintiff led to adverse action under tort law, the defendants are liable. It must be mentioned here that a truck which plaintiff was servicing had the brakes disabled, and all the parts were conveniently removed. Plaintiff reported the incident to fleet supervisor Tom Leggio and he initially accused plaintiff of installing the wrong unit, which was untrue. Leggio threatened to write plaintiff up for poor work performance if he didn't withdraw his grievance.

Once plaintiff pulled the work order from the company data base and showed Leggio that the right unit was installed and that it was installed by another mechanic while plaintiff was out on disability Mr. Leggio, having no other choice, acknowledged the braking system had been tampered with. Douglas was the only mechanic on duty in the absence of plaintiff. Mr. Douglas also left a jack in a blind spot under a truck plaintiff was working on, consequently, when plaintiff lowered the truck it almost fell off the lift. Mr. Douglas reported the incident to John Ianiro who contacted fleet supervisor, Tom Leggio and plaintiff was written up for poor work performance for creating an unsafe work condition. Plaintiff and Union representative, Joe Weinbel contested the write up because Douglas was the one who actually created the unsafe condition. Douglas lied and said he didn't put the jack there and the write-up remained in plaintiff's records.

In Staub V. Proctor Hospital, the United States Supreme Court held: "And it is axiomatic under tort law that the exercise of judgment by the decision maker does not prevent the earlier agent's action and hence the earlier agent's discriminatory animus from being the proximate cause of the harm. Proximate cause requires only some direct relation between the injury asserted and the injurious conduct alleged and excludes only those links that are too remote, purely contingent or indirect. The requirement that the biased supervisor's action be a causal factor of the ultimate employment action incorporates the traditional tort law concept of proximate cause."

The McDonnell Douglas court recognized that there would be scenarios under title VII, i.e. failure to promote or train, discriminatory discipline and so on, presented in a given case, McDonald Douglas V. Green 411 US 792 (1973).

### THE ISSUE OF ARBITRATION

Counsel for the defendants have brought up the issue of arbitration both at the EEOC stage and again here in their motion to dismiss, which is indicative that counsel recognizes that there are issues which require settlement or legal redress. Counsels assertions that plaintiff could have arbitrated are frivolous. Plaintiff has no authority or the means to arbitrate or commission an arbitrator. However, just as counsels exhibit states, (see copy of page from collective bargaining agreement, submitted by counsel) the union could have requested arbitration or the management of Bimbo Bakeries. Counsel for defendants have a prime role in requesting arbitration as well, as the section on arbitration reads in significant part, Article VII (a), "If a matter is not resolved pursuant to Article VI, the matter may be referred to Arbitration before the American Arbitration Association (AAA). Prior to any such referral, however, the parties or their attorneys shall consult to determine whether or not the matter to be arbitrated should be submitted to arbitration." I also wish to point out that the defendants excluded the Union from being present at the investigation. Defendants also withheld minutes from the investigation despite numerous requests from the Union and plaintiff, Rina

Carpano insisted that plaintiff nor the Union was entitled to the minutes; however, the EEOC disagreed and turned them over at the conclusion of their investigation (over a year later). Rina Carpano substantiates petitioners claim about the investigation minutes in audio recording already submitted to the court. By the time plaintiff received the minutes it was too late to arbitrate according to the Union President, Joyce Allston.

### PLAINTIFF'S CLAIM OF BREACH OF CONTRACT

### SHOULD NOT BE DISMISSED

As stated previously, counsel has continually twisted the facts of this case, the rules of the company and concealed evidence. Contrary to counsels assertion, plaintiff submitted his breach of contract claim on the same date as his amended complaint, (please see number 25 and 26 on civil docket sheet) which was submitted on a separate sheet of paper. Therefore, it was not submitted late and dismissal of that claim should be denied. Plaintiff has already pointed out many instances of defendant's violation of the Collective Bargaining Agreement. In particular defendants breached two primary subdivisions: "It is agreed that the joint purpose of this Agreement is to provide a safe and harmonious working environment", (p3). Article V (A), "The employer agrees that it will not suspend, discharge or take any disciplinary action against any permanent employee except for just cause." Since plaintiff submitted his claim for breach of contract in timely fashion and the facts of this case support a claim for breach of contract, the latter claim should not be dismissed. Finally, since a contract is a written agreement that is complete, clear and unambiguous on its face it must be enforced according to the plain meaning of its terms, and the fundamental, neutral precept of contract interpretation is that agreements are construed to accord with the particular intent, St. Johns University V. Sanford M. Bolton, Hygrosol Pharmaceuticals 108 CV 05039-NGG-JMA Eastern District New York ( 2010).

### PLAINTIFF'S CLAIM OF DELIBERATE INDIFFERENCE

### SHOULD NOT BE DISMISSED

Contrary to counsels assertion plaintiff's claim was filed in timely fashion. Plaintiff made a motion to add the above claim, plaintiff was given a date to file the aforementioned claim and did so within the deadline. Therefore counsel's request for dismissal of the latter claim should be denied and no further request for dismissal entertained. Furthermore the facts of the instant case support a claim for deliberate indifference in that the defendants consciously and recklessly disregarded the consequences of their acts and omissions and in that sense were not merely negligent, but embarked on a consistent and hostile campaign to purposely cause harm and or with the knowledge that harm would result. As previously mentioned, management divulged personal and confidential information regarding plaintiff's personal records which included an aged arrest record. Also because there are blatant violations of due process in the instant case and defendant has since lost his job as the result of the hostile environment, medical coverage, pension vesting

and because of his age may find it difficult if not impossible to find employment of same or equal value. As a result, defendants also violated plaintiff's property rights.

## COUNSEL FOR THE DEFENDANTS HAVE WILLFULLY CONCEALED EVIDENCE
## DISTORTED THE FACTS OF THE CASE AND THEREFORE THEIR MOTION TO DISMISS MUST BE DENIED

In the instant case counsel for the defendants have willfully withheld pertinent and incriminating evidence, therefore, defendant's motion to dismiss should be denied. Counsel has had in their possession two audio CD's, one of which is a recording of Rina Carpano and Frank Gadero claiming that, "nobody would confirm that the photo existed". Counsel is also aware that defendants held an investigation into a sexual harassment complaint in violation of title VII, and plaintiff's due process rights. Documentation has been submitted to support the latter. Counsel has also asserted that it is not against the law for defendants to discriminate against plaintiff with regard to the enforcement of rules and to punish plaintiff for unwritten rules. Counsel then has admitted that the instant case has arbitral issues. Counsel has submitted a portion of the collective bargaining agreement, however they have refused to acknowledge that defendants and counsel for defendants are mutually responsible for resolving labor disputes. Defendants have done everything possible to conceal evidence and did everything possible to curtail the possibility of any settlement or resolution. Under the New York State Bar Association rules, rule 3.3, Candor of the tribunal, "If a lawyers client or a witness is called by the lawyer has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including if necessary disclosure to the tribunal." Moreover, rule 3.3 B reads in relevant part: " A lawyer who represents a client before a tribunal and who knows that a person is engaging or has engaged in criminal or fraudulent conduct related to the proceeding shall take reasonable, remedial measures, including if necessary disclosure to the tribunal." Finally, under New York Legal Ethics, NYDR 7-102 (a)(1) "Prohibits a lawyer from taking any action in litigation that would serve merely to harass or maliciously injure another person," and NYDR 7-02 makes it compulsory for a lawyer to represent a client within the boundaries of the law. "A lawyers professional obligation to the client and his adversaries to ensure that actions commenced and positions advanced are not frivolous or meritless, Moreno V. Acoren 910 F2d 1043 ( 2 Cir 1990). Given the aforementioned, and the plethora of evidence presented against defendants, counsel's motion to dismiss should be denied.

## CONCLUSION

Plaintiff's amended complaint should not be dismissed because there are clear and blatant violations of the Labor law, Title VII and plaintiff's rights to due process and equal protection of the law under the 5th and 14th amendment of the United States Constitution. Plaintiffs claim should not be dismissed because his rights under the 19th Century Civil Rights Act, amended in 1993, which ensures all persons equal rights under the law and outlines the damages available to complainants in actions brought under the Civil Rights Act of 1964, Title VII. Plaintiff's complaint

should not be dismissed because section 1981 of the U.S. Code plaintiff is entitled to compensatory and punitive damages for intentional discrimination, i.e. disparate treatment. It must be noted that section 1981 of the U.S. Code, amended in 1991 provides additional federal remedies to deter harassment and intentional discrimination in the work place. Plaintiff's complaint should not be dismissed because Title VII's anti-retaliation provision, section 704(a) states in pertinent part that; "It is unlawful to retaliate against an employee, because he has opposed any practice, made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter." 42 U.S.C. sectione-3(a), also see Deravin V. Kerik 2003 U.S. App. Lexis 13948 (2 Cir 2003), a Title VII proceeding or investigation or investigation is protected activity within the scope of section 704(a). Finally since the terms, conditions and privileges of plaintiff's employment were compromised and plaintiff was limited, classified segregated and classified in violation of title VII his complaint should not be dismissed.

RESPECTFULLY SUBMITTED

ROBERT DINGLE Jr.

*Robert Dingle Jr* [signature]

9