UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
ROBERT DINGLE JR.,

                Plaintiff,

    - v -

BIMBO BAKERIES USA/ENTENMANN'S

              Defendants.
------------------------------------------------------x

11-CV-2879 (CBA) (VVP)

ROBERT DINGLE JR.,

                Plaintiff,

    - v -

ENTENMANN'S/BIMBO BAKERIES USA

              Defendants.
------------------------------------------------------x

13-CV-3913 (CBA) (VVP)

ROBERT DINGLE JR.,

                Plaintiff,

    - v -

BAKERY CONFECTIONARY, TOBACCO
WORKERS AND GRAIN MILLERS
INTERNATIONAL UNION, LOCAL
NO. 53

              Defendants.
------------------------------------------------------x

13-CV-4141 (CBA) (VVP)

1

<u>REPORT AND RECOMMENDATION</u>

POHORELSKY, Magistrate Judge:

The pro se plaintiff, Robert Dingle, Jr., brings three related actions against his former employer, Bimbo Bakeries USA/Entenmann's ("Entenmann's"), and his union, Bakery Confectionary, Tobacco Workers and Grain Millers International Union, Local No. 53 ("Local 53"). Against Entenmann's, the plaintiff asserts claims for sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*, as well as related constitutional and state law claims. Against Local 53, he brings suit under 29 U.S.C. § 185, asserting that the union breached the duty of fair representation owed to him during his disputes with management and coworkers, and also asserts a common law claim that the union defamed him.

The defendants have moved to dismiss each of the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6), and Chief Judge Amon referred the motions to the undersigned to issue a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). As the plaintiff's three complaints allege overlapping facts and make interrelated claims, they are addressed together in this Report and Recommendation. I respectfully recommend dismissal of each of the plaintiff's complaints for failure to state a claim upon which relief may be granted.

**BACKGROUND**

**I.     PROCEDURAL HISTORY**

The plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on November 17, 2010, alleging claims of sex discrimination and retaliation by his employer, and received a Notice of Right to Sue from the EEOC on March 17, 2011.

The plaintiff filed his first complaint in federal court on June 14, 2011 asserting Title VII and defamation claims against his employer. *Dingle v. Bimbo Bakeries USA*, 11-cv-02879 (E.D.N.Y. 2011)

2

("Dingle I").  Chief Judge Carol Bagley Amon granted the defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) with leave to amend, finding that the plaintiff's allegations failed to state a claim for relief under Title VII, and declining to exercise supplemental jurisdiction over the remaining state law claim.  Memorandum & Order, July 11, 2012 ("Mem. & Order").  The plaintiff filed an amended complaint re-alleging his previous Title VII and state law claims, as well as several new claims.[1]

On May 16, 2013, the plaintiff filed two additional lawsuits in state court, both pertaining to the same course of events. Both were removed to federal court on July 12, 2013.  In one of these additional cases, the plaintiff names Entenmann's as the sole defendant, and makes largely the same allegations as he made in Dingle I, but adds a breach of contract claim based on Entenmann's alleged failure to pay the full amount of a previous settlement agreement entered into on January 8, 2013.  *Dingle v. Entenmann's/Bimbo Bakeries USA*, 13-cv-03913 (E.D.N.Y. 2013) ("Dingle II").  In the other, he names Local 53 as sole defendant, and asserts that the union breached its duty of fair representation and allowed the plaintiff to be defamed.  *Dingle v. Bakery Confectionary, Tobacco Workers and Grain Millers Int'l Union, Local No. 53,* 13-cv-04141 (E.D.N.Y. 2013) ("Dingle III").

Both defendants have now moved to dismiss all claims made in the plaintiff's three pending complaints pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

[1] The plaintiff has also further amended his complaint through five supplemental filings.  These include (1) a letter filed the same day as his amended complaint, detailing additional facts surrounding his suspension and ultimate termination (ECF No. 26); (2) a September 4, 2012 letter containing a copy of Entenmann's Equal Employment policy (ECF No. 28); (3) a September 27, 2012 letter motion requesting that a breach of contract claim be added to his compliant based on Entenmann's alleged failure to pay the full amount promised in an arbitration agreement, and also describing in broad strokes the "mean spirited [sic] and violent" nature of his former workplace (ECF No. 31); (4) a November 7, 2012 letter requesting that a claim of "deliberate indifference" be added to his complaint (ECF No. 37); and (5) a July 1, 2013 letter requesting that Local 53 be added as a defendant because it is "bound together" with Bimbo Bakeries by a Collective Bargaining Agreement, and thus "equally liable" to the plaintiff (ECF No. 46).  The plaintiff's motion to add a breach of contract claim to his Dingle I complaint is rendered moot by the inclusion of this claim in Dingle II.  Despite legitimate concerns about the admissibility of the plaintiff's motions to add a "deliberate indifference" claim and to add Local 53 as a joint defendant, the substance of these motions are considered and rejected later in this report.

## II.    FACTS

The following facts have been assembled from the plaintiff's four complaints,[2] his memoranda of law in opposition to the defendants' motions to dismiss, and from documents incorporated by reference into these papers.  *See Cusamano v. Sobek*, 604 F. Supp. 2d 416, 461 (N.D.N.Y. 2009) ("[T]he mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint."); *see also Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).  The Court takes these allegations as true at the motion to dismiss stage.

The plaintiff, a 53-year old African-American male, began his employment with the defendant as a mechanic at Entenmann's Brooklyn depot on June 6, 2009.  Dingle I Compl., Ex. B, p. 6.  The plaintiff alleges that throughout the month of March 2010, Brian Lim-Tom and Leon Broderick, two loading platform foremen at the depot, "distributed a photo of a nude male which resembled plaintiff to other employees at the depot including mechanic Forman [sic] Cecil Douglas (via text message)."  Dingle I Am. Compl. 6.  "[T]he photo," plaintiff explains, "was a gag photo which depicted a nude male with a caption underneath saying 'Tell your man stop sending sexy photos of himself, I don't want his ass.' Seems the photo was retrieved from some internet site." *Id.* at 7.  The plaintiff further alleges that over the following weeks, Lim-Tom and Broderick repeatedly

---

[2] Plaintiff's four complaints include his initial complaint and amended complaint in Dingle I, as well as his complaints in Dingle II and III.  Each complaint pertains to the same course of events, but includes distinct and at times disjointed allegations of fact that have been cobbled together into a cohesive narrative for this Report and Recommendation.

"made lewd and degrading comments" about the size of the plaintiff's genitalia and characterized the plaintiff as "a social deviant, a freak, and a homosexual." *Id.* at 6.

Entenmann's first became aware of this conduct on April 8, 2010, after the plaintiff and his coworker Donald Matthews had gotten into a physical altercation over who was responsible for moving a truck from the loading bay.  During an investigation into the fight by supervisors Frank Gadero and John Janiro, Dingle informed them about the picture and statements allegedly being circulated by Messrs. Lim-Tom and Broderick.  Dingle I Compl. Ex. B, p. 3.  The supervisors then interviewed Lim-Tom, Broderick, and several other employees before concluding that they could not be sure who sent the photo to whom.  *Id.* at 9.  Ultimately, Matthews was discharged for his role in the altercation that precipitated the investigation, Dingle I Compl. 5, and Lim-Tom and Broderick were suspended without pay for a week pending completion of the investigation,  Dingle I Compl. Ex. B., p. 3.  The plaintiff's union representative, Joe Weinbel, was not involved during this investigation.  *Id.*

Several weeks later, a hearing concerning the plaintiff was held with Mr. Weinbel, but without the plaintiff in attendance.  After the hearing, the plaintiff was suspended without pay for one day and ordered to take an anger management course at his own expense.  Dingle I Am. Compl. 10.  In response, the plaintiff filed a complaint with his union against Weinbel, charging that Weinbel had refused to divulge the minutes of both the meeting leading to his suspension and of the investigation into his complaint.  Dingle I Compl. Ex. G; Dingle III Compl. ¶ 8.

On November 17, 2010, the plaintiff also filed a complaint against his employer with the Equal Employment Opportunity Commission ("EEOC"), alleging sexual harassment and retaliation.  Dingle I Def.'s Mot. to Dismiss, Ex. B.  The plaintiff received a Right to Sue letter on March 17, 2011, and filed his first lawsuit against Entenmann's three months later in June.  Dingle I Compl. Ex. G; Def.'s Mot. to Dismiss Ex. C.

Meanwhile, shortly after he filed his EEOC complaint in November 2010, the plaintiff took a seven-month disability leave due to ankle and knee injuries. Dingle I Am. Compl. 9. When he returned to work in May 2011, a secretary, Lisa Casaligi, made him obtain specific doctor's notes, a procedure that a union delegate informed the plaintiff was not required. This delayed his return to work for six weeks, although wages for these six weeks were later reimbursed. *Id.*

After he returned to work, the plaintiff was cited on several occasions, he contends improperly, for performance violations. Thus, while at work on September 22, 2011, the plaintiff asserts that he was improperly cited after a coworker negligently left a jack underneath a truck the plaintiff had been working on. *Id.* at 10. He and his union representative, Joe Weinbel, unsuccessfully contested the disciplinary report. *Id.* He was cited again four months later, on February 25, 2012, for running an extension cord across an entry door, Dingle I Compl. Ex. F, and again on March 12, 2012, for repairing a truck in a non-designated area. Dingle I Am. Compl. at 11. Throughout this time, the plaintiff also developed an increasingly hostile relationship with another mechanic, Cecil Douglas. *Id.* at 7, 9-10.

A meeting was held on July 3, 2012, in which plaintiff's union representative Joe Weinbel, supervisor Joe Leggio, and the plaintiff discussed the plaintiff's belief that he was being unfairly written up by supervisors and harassed by his coworker, Mr. Douglas. Mr. Weinbel suggested that the write-ups were being issued in retaliation for plaintiff's sexual harassment complaint. *Id.* at 10. The consequences of this meeting, if any, are not disclosed in the record.

Relations between the plaintiff and Mr. Douglas did not improve, however, and on August 31, 2012, the plaintiff was accused of threatening Mr. Douglas. As a result, he was immediately suspended, and then notified of his termination four weeks later. Dingle III Compl. ¶ 12. The plaintiff moved for arbitration pursuant to the terms of Local 53's Collective Bargaining Agreement ("CBA") with Entenmann's, claiming unlawful termination. During arbitration proceedings on

January 8, 2013, he settled his claim for $13,000 "in full satisfaction of all claims [against Entenmann's] under the Collective Bargaining Agreement."   Dingle III Compl. ¶ 15; Dingle II Def.'s Mem. of Law Ex. A, ¶¶ 3, 4, 6.   Pursuant to the agreement, Entenmann's ultimately paid the plaintiff $6,513.86, withholding the balance of $6,486.14 for payroll taxes which they contend are applicable.   Dingle II Pl.'s Ltr. Mot. for Inj. Relief (ECF No. 22).

## DISCUSSION

### I.   MOTION TO DISMISS

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal, not the factual, sufficiency of a complaint.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000) ("At the Rule 12(b)(6) stage, '[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims.'") (quoting *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998)).   At this stage, the Court accepts as true all factual allegations in the complaint, views the complaint in the light most favorable to the plaintiff, and draws all reasonable inferences in his favor.  *See Chambers v. Time Warner*, Inc., 282 F.3d 147, 152 (2d Cir. 2002); *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001).   Even so, conclusory allegations or conclusions of law "couched" as factual allegations need not be accepted as true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   To avoid dismissal, plaintiffs must plead facts that "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678 (requiring factual allegations that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").   In addition to the allegations in the complaint, courts may consider documentary exhibits or written instruments annexed to the complaint, documents integral to the parties' case and on which the complaint relies heavily, and matters subject to judicial notice.  *See Tellabs, Inc. v. Makor Issues &*

7

*Rights, Ltd.*, 551 U.S. 308, 322 (2007); *ATSI Comm'ns, Inc. v. Shaar Fund*, 493 F.3d 87, 98 (2d Cir.

2007); *Chambers v. Time Warner*, 282 F.3d 147, 152-54 (2d Cir. 2002); *Int'l Audiotext Network, Inc. v.

AT&T*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d

Cir. 1991); *see also* Fed. R. Civ. P. 10(c).[3]

Where a plaintiff proceeds *pro se*, the court reads his submissions liberally and interprets

them as raising the strongest arguments they suggest. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d

471, 474-75 (2d Cir. 2006); *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004); *Burgos v.

Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). "A *pro se* complaint, however inartfully pleaded, must be

held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551

U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 112 (1976)). This guidance applies with

particular force when a plaintiff's civil rights are at issue. *See McEachin*, 357 F.3d at 200. "However,

even *pro se* plaintiffs asserting civil right claims cannot withstand a motion to dismiss unless their

pleadings contain factual allegations sufficient to raise a right to relief above the speculative level."

*Jackson v. NYS Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (internal quotation marks

omitted), *appeal dismissed*, 431 Fed. App'x 21 (2d Cir. 2011); *see also Iqbal*, 556 U.S. at 663.

## II.   PLAINTIFF'S CLAIMS

Liberally construed, the plaintiff's amended complaint in Dingle I asserts the following federal

claims, only the first two of which were asserted in the initial complaint: (1) a Title VII hostile work

environment claim premised on allegations that his co-workers sexually harassed him; (2) a Title VII

---

[3] It is both unnecessary and inappropriate to convert the defendants' 12(b)(6) motions into Rule 56 motions for summary judgment, as Entenmann's had requested in its original Motion to Dismiss in Dingle I. Entenmann's had properly affixed as an exhibit to that motion a Notice to Pro Se Litigant Who Opposes a Rule 12 Motion Relying on Matters Outside the Pleadings. *See* Local Civil Rule 12.1. But they did not do so in their Motion to Dismiss the amended complaint, nor did the defendants submit Rule 12.1 notices in Dingle II and III. It would therefore be unfair to the plaintiff to treat these motions as being for summary judgment. *See Buculei v. U.S.*, 2006 WL 1581415, at *5 (E.D.N.Y. Jun. 2, 2006) (noting that Rule 12.1 requires "unequivocal notice" to a pro se plaintiff). The Court may still consider certain documents provided by the defendants, including the plaintiff's Collective Bargaining Agreement, Settlement Agreement, and various disciplinary reports, because they are referenced in and are integral to the plaintiff's complaints. The defendants' motions remain motions to dismiss, however, meaning that the plaintiff is entitled to have his factual allegations accepted as true and judgment rendered solely as a matter of law.

retaliation claim premised on allegations that his employer retaliated against him when he complained of sexual harassment; and (3) due process and equal protection claims under the Fifth and Fourteenth Amendments to the United States Constitution.  The Court interprets the plaintiff's amended Dingle I complaint and Dingle II complaint as asserting the following state law claims, only the first of which was asserted in the initial complaint: (1) a defamation claim premised on alleged statements of his coworkers Lim-Tom and Broderick; (2) discrimination and retaliation claims under the New York State and New York Human Rights Laws that parallel his Title VII claims; (3) a breach of contract claim based on allegations that Entenmann's improperly withheld taxes from the plaintiff's settlement payment; and (4) additional claims based on allegations that his employer violated internal policies.  Finally, the Court interprets the plaintiff as asserting two claims against Local 53: (1) a breach of the duty of fair representation, based on Mr. Weinbel's alleged conduct during the plaintiff's sexual harassment investigation and subsequent disciplinary proceedings; and (2) a defamation claim based on allegations that Mr. Weinbel allowed the plaintiff's coworkers to make defamatory remarks during management's investigation.

**A. Federal Claims Against Entenmann's**

*1. Hostile Work Environment*

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's. . . sex." 42 U.S.C. § 2000e-2(a)(1).  "One form of gender discrimination prohibited by Title VII is sexual harassment that results in a 'hostile or abusive work environment.'" *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.,* 136 F.3d 276, 289 (2d Cir.1998) (quoting *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 66 (1986)).  Under this doctrine, even if an "employee does not experience a specific negative action," he may have a viable claim under Title VII for sexual discrimination if "the harassment is so pervasive that it changes the conditions of employment." *Bartniak v. Cushman &*

*Wakefield, Inc.,* 223 F.Supp.2d 524, 528 (S.D.N.Y. 2002).  To state a claim for hostile work

environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the

employer's conduct (1) created an environment that a reasonable person would find severely hostile

or abusive (objective hostility); (2) created an environment that the plaintiff actually perceived as

severely hostile or abusive (subjective hostility); and (3) created such an environment because of the

plaintiff's sex.  *Patane v. Clark,* 508 F.3d 106, 113 (2d Cir. 2007) (citing *Gregory v. Daly,* 243 F.3d 687,

691-92 (2d Cir. 2001)).

When the harassment is perpetrated not by the employer but by its employees, there also must

be a basis to hold the employer liable for the hostile environment.  *Petrosino v. Bell Atlantic,* 385 F.3d

210, 225 (2d Cir. 2004); *Mack v. Otis Elevator,* 326 F.3d 116, 123 (2d Cir.2003) ("[I]t is only when a

supervisor with immediate (or successively higher) authority over the employee has engaged in the

complained of conduct that the employer may be subject to vicarious liability.  Employers are not,

by contrast, vicariously liable for hostile work environment created by a mere co-worker of the

victim.") (internal citations, quotation marks and punctuation omitted).

This "fundamental analysis is no different in the same-sex sexual harassment context."

*Tepperwien v. Entergy Nuclear Operations, Inc.,* 606 F. Supp. 2d 427, 438 (S.D.N.Y. 2009).  The Supreme

Court held in *Oncale v. Sundowner Offshore Servs., Inc.* that "nothing in Title VII necessarily bars a claim

of discrimination 'because of . . . sex' merely because the plaintiff and the defendant (or the person

charged with acting on behalf of the defendant) are the same sex."  *Oncale v. Sundowner Offshore*

*Servs.,* Inc., 523 U.S. 75, 79 (1998).  "*Oncale* did not suggest however, that male harassment of other

males always violates Title VII.  *Oncale* emphasized that every victim of such harassment must show

that he was harassed *because he was male*."  *Simonton v. Runyon*, 232 F.3d 33, 36 (2d Cir. 2000) (emphasis

in original) (citing *Oncale*, 523 U.S. at 80-81); *see also Alfano*, 294 F.3d at 373 ("[I]t is 'axiomatic' that in

order to establish a sex-based hostile work environment under Title VII, a plaintiff must

demonstrate that the conduct occurred because of [his or] her sex.") (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)).

The Supreme Court in *Oncale* described three ways in which a male plaintiff could show that he was harassed by male coworkers because of his sex: (1) by providing "credible evidence that the harasser was homosexual," and therefore potentially motivated by sexual desire; (2) by demonstrating that "the harasser is motivated by general hostility to the presence of [men] in the workplace"; or (3) by "offer[ing] direct comparative evidence" showing that the alleged harasser treated members of the sexes differently in a mixed-sex workplace. *Oncale*, 523 U.S. at 80-81. "Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted 'discrimination because of sex.'" *Id.* at 81. Although a male plaintiff need not prove his harasser's "homosexuality or gender-based animus" at the motion to dismiss stage, he "must still allege enough facts to plausibly plead [it]." *Argeropoulos v. Exide Tech.*, No. 08–CV–3760 (JS), 2009 WL 2132443, at * 3 (E.D.N.Y. Jul. 8, 2009) (citing references omitted).

In the previous decision, the Court dismissed the plaintiff's hostile work environment claim because the plaintiff had not alleged facts that plausibly suggested that any of his harassers are homosexual, that they were motivated by hostility towards men in the workplace, or that they treated men differently than women in a mixed-sex work environment. Mem. & Order 7 - 8. The Court reasoned that although the harassment suffered by the plaintiff was sexual in nature (i.e. involved nude photos and comments about the plaintiff's genitalia), it did not constitute gender-based discrimination. *Id.* (citing *Oncale*, 523 U.S. at 80) ("We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations."). Instead, the Court found that the plaintiff's allegations showed, at best, that his coworkers had a personal animus

11

against him. *Id.* at 8. The plaintiff's allegations contained no suggestion that his employer had animus towards men generally, or towards the plaintiff specifically because he was a male. *Id.*

The court analogized this case to *Borski v. Staten Island Rapid Transit*, where the plaintiff alleged that his male supervisor circulated sexually explicit, vile, and derogatory materials at the office, including sexual cartoons, sexual advertisements for DVD and phone services, and magazine photos altered to portray enlarged body parts. *Borski v. Staten Island Rapid Transit*, No. 04-CV-3614 (SLT)(CLP), 2006 WL 3681142, at *1 (E.D.N.Y. Dec. 11, 2006). The *Borski* court granted the defendant's motion to dismiss, holding that the allegations "at best, establish[ed] personal animus against [the plaintiff] by his co-workers and supervisors and not gender-based animus against men or animus towards [the plaintiff] because he is a man." *Id.* at *3. Personal animus coupled with workplace harassment based on words or pictures having sexual content or connotation is not sufficient to sustain a Title VII hostile work environment claim. *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Oncale*, 523 U.S. at 80 (Title VII "does not set forth 'a general civility code for the American workplace'")); *see also Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 519 (S.D.N.Y. 2010) (finding that "although [the plaintiff's] work environment may have been unpleasant – even 'hostile' in ordinary parlance – his discrimination claim must be dismissed because the circumstances do not permit an inference that 'he was singled out for mistreatment because of [his] sex'").

A review of the allegations in the amended complaint reveals that the plaintiff has elaborated on many of the facts previously alleged but has not proffered any additional facts tending to suggest gender-based animus. The amended complaint does not allege that any of his identified harassers, Lim-Tom, Broderick, or Matthews, is homosexual, other than speculating that "it is highly unlikely that heterosexual men would keep and distribute photos of other nude men." Pl.'s Opp'n 7. To the

12

contrary, the plaintiff alleges he was ridiculed as being homosexual.[4]  The allegations in the amended complaint neither suggests that the plaintiff's alleged harassers, Lim-Tom, Broderick, and Matthews, were generally hostile towards men in the workplace, nor treated members of the sexes differently. Furthermore, the amended complaint contains no allegations that the plaintiff was treated poorly by his employer simply because he is male.

The plaintiff has also attached his employer's sexual harassment policy to his amended complaint and alleges that their failure to adhere to it constitutes a Title VII violation.  The possibility that Entenmann's failed to follow its own internal policy on harassment has no bearing on whether the alleged conduct violates Title VII.  As a result, the plaintiff has failed to allege any additional facts suggesting that he was harassed because of his gender, and thus his Title VII claim for sexual harassment should be dismissed.

*2. Retaliation*

The plaintiff alleges that after he complained that he was being sexually harassed by his coworkers, his employer retaliated against him by suspending him for a day, requiring him to take anger management classes, issuing three performance citations over a two-year period, and ultimately firing him.  "To state a claim for retaliation in violation of Title VII, a plaintiff must plead facts that would tend to show that: (1) [he] participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging [him]; and (3) there exists a causal connection between the protected activity and the adverse action."  *Patane v. Clark*, 508 F.3d 106, 115 (2d Cir. 2007) (citing *Feingold v. New York*, 366 F.3d 138, 156 (2d Cir. 2004)); *see also Regan v. Benchmark Co.*, No. 11-CV-4511 (CM), 2012 WL 692056, at *12 (S.D.N.Y. Mar. 1, 2012) ("Plaintiff

---

[4] As noted in the Memorandum and Order, this allegation could be construed as alleging a hostile work environment claim based on the plaintiff's perceived sexual orientation. However, "sexual orientation is not a protected class for the purposes of Title VII's substantive anti-discrimination provision."  *Birkholz v. New York City*, No. 10–CV–4719 (NGG)(SMG), 2012 WL 580522, at *7 (E.D.N.Y. Feb. 22, 2012); *see also Dawson v. Bumble & Bumble*, 398 F.3d 211, 217 (2d Cir. 2005) ("[T]he law is well-settled [that]. . . Title VII does not prohibit harassment or discrimination because of sexual orientation.") (citing *Simonton v. Runyon*, 232 F.3d 33, 35 (2d Cir. 2000)).

must plead facts sufficient to render her retaliation claims facially plausible under *Twombly* and *Iqbal*.").

The first element, that the plaintiff participated in protected activity known to the defendant, is not met because the plaintiff did not reasonably believe that Entenmann's actions constituted sexual harassment under Title VII.  "To prove that his complaints of a hostile work environment were a protected activity, Plaintiff is not required to establish that the conduct complained of actually amounted to a violation of Title VII'." *Drummond v. IPC Intern., Inc.*, 400 F. Supp. 2d 521, 534 (E.D.N.Y. 2005).  Thus, this element may be satisfied even where, as here, the defendant did not actually engage in or permit unlawful sexual harassment.  But a plaintiff must still "demonstrate a good faith, reasonable *belief* that the underlying challenged actions of the employer violated the law." *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988) (emphasis supplied) (citing references and internal quotation marks omitted); *see also Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002).  The reasonableness of a plaintiff's belief should be assessed in light of the totality of the circumstances.  *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996) (citing *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993)).

In the previous decision, Judge Amon found that the plaintiff could not have reasonably believed that he was being harassed because of his gender, rather than personal animus, and thus that he could not have reasonably believed that the complained of conduct violated Title VII.  Mem. & Order 10 (citing *La Grande v. DeCrescente Distributing Co.*, 370 Fed. App'x 206, 212 (2d Cir. 2010); *Drummond*, 400 F. Supp. 2d at 523).  The plaintiff fails to allege any new facts in his Amended Complaint that would suggest a reasonable belief that he was being harassed due to his gender. Thus, he has failed to demonstrate that he engaged in protected activity.

The third element is also not met because the plaintiff has not pled any facts tending to establish a causal link between the plaintiff's sexual harassment complaint, made on April 8, 2010,

14

and any subsequent adverse employment action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2521 (2013) (Plaintiff must show that "the desire to retaliate was the but-for cause of the challenged employment action."). In granting the initial Motion to Dismiss, Judge Amon found that the primary retaliatory conduct – his one-day suspension and the requirement that he undergo anger management training at his expense, imposed in May 2010 – was only taken after the plaintiff fought with Matthews and was described at a hearing as "belligerent and violently out of control," while the record was bare of facts capable of giving rise to a plausible inference that Entenmann's had a retaliatory motivation. Mem. & Order 10 (quoting Dingle I Compl. 6). Additionally, the plaintiff notes in his initial complaint that Douglas, Lim-Tom, and Broderick were each subject to harsher disciplinary action than the plaintiff for their connection to the April and May 2010 incidents, despite the fact that none of them engaged in protected activity. Dingle I Compl. 5, Ex. B., p. 3. The plaintiff fails to allege any new facts in his Amended Complaint that would tend to establish a causal link between the plaintiff's sexual harassment complaint and these adverse employment actions. Absent such facts, the existence of a legitimate reason for the plaintiff's censure, coupled with the comparative leniency of this censure, renders implausible any suggested inference of retaliatory motivation.

In addition to the events of May 2010, the plaintiff further suggests that Entenmann's retaliated against him by (1) preventing him from returning to work after a seven-month disability leave in May 2011; (2) issuing false disciplinary write ups on September 11, 2011 and May 12, 2012; and (3) indefinitely suspending or terminating him in August 2012, but he does not plead any facts tending to show that these actions were taken for a retaliatory purpose. In some cases, "[p]roof of a causal connection can be established indirectly by showing that the protected activity was followed closely by discriminatory treatment." *Jackson v. City of New York*, No. 06–CV-1835 (RRM)(MDG), 2011 WL 1533471 (E.D.N.Y. Mar. 3, 2011) (citing *DeCintio v. Westchester County Medical Center*, 821

F.2d 111, 115 (2d Cir. 1987)).  But "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (internal quotation marks omitted). Courts in this circuit have held that timespans "of two months or more defeat an inference of causation." *Ragin v. East Ramapo Cent. Sch. Dist.,* No. 05-CV-6496 (PGG), 2010 WL 1326779, at *24 (S.D.N.Y. Mar. 31, 2010); *see also Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85 (2d Cir. 1990) (three-month lapse between protected activity and adverse act was insufficient to establish a causal connection); *Garrett v. Garden City Hotel, Inc.*, No. 05-CV-0962 (JFB)(AKT), 2007 WL 1174891, at *21 (E.D.N.Y. Apr. 19, 2007) (same for two-and-a-half month lapse); *Feliciano v. Alpha Sector, Inc.*, 00-CV-9309 (AGS), 2002 WL 1492139 (S.D.N.Y. July 12, 2002) (same for two-month lapse); *Yarde v. Good Samaritan Hosp.,* 360 F.Supp.2d 552, 562 (S.D.N.Y.2005) ("Three months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation.").  Under this standard, the plaintiff has failed to plead facts that tend to show a causal connection between his sexual harassment complaints and any adverse employment action that he suffered, because aside from the first allegation of retaliation, this conduct falls far outside the three-month period for which courts in this circuit will infer causation.

The plaintiff's amended complaint and supplemental submissions fail to allege any additional facts which lend support to a conclusion that the plaintiff engaged in protected activity or that the alleged protected activity is causally connected to adverse employment actions.  Therefore the plaintiff's retaliation claim under Title VII should be dismissed.

### 3. *Constitutional Claims*

The plaintiff asserts essentially three constitutional claims against the defendant Entenmann's for alleged violations of his equal protection and due process rights. The plaintiff alleges that he has been deprived of "his rights to equal protection of the law and his due process rights" because the company failed to adhere to its own policy, Dingle I Am. Compl. 5, because the defendant withheld company records of its investigation into the plaintiff's sexual harassment complaint, *id.* at 11, and because the defendant "hindered an alternative method of resolution," *id.* All three claims fail for the simple reason that the plaintiff does not allege that Entenmann's is a government actor. To state a claim for an equal protection violation, a plaintiff "must allege that a *government* actor intentionally discriminated against them on the basis of race, national origin or gender." *Anderson v. City of New York*, 817 F. Supp. 2d 77, 93 (E.D.N.Y. 2011) (emphasis added) (quoting *Hayden v. County of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999)). Similarly, due process violations under the Fifth and Fourteenth Amendments require state action. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 930 (1982) ("[T]he Due Process Clause protects individuals only from governmental and not from private action."). Since the plaintiff has not alleged any facts tending to show that Entenmann's is a government actor, his constitutional claims should be dismissed.

In their motion, the defendant requests that these claims be dismissed with prejudice. Def.'s Mem. in Supp. 17. Although the plaintiff has not requested leave to replead, the court finds nothing in the record to indicate that the plaintiff could be successful in doing so. Therefore, the court recommends dismissing the constitutional claims with prejudice.

## B.  State Law Claims Against Entenmann's

Because I recommend dismissal of the plaintiff's federal claims, there is no basis for exercising supplemental jurisdiction over the plaintiff's state law claims. 28 U.S.C. § 1367(c)(3).

Should one or more of the federal claims survive, however, I address the sufficiency of the state law claims.

### 1. *Defamation*

The plaintiff makes two separate defamation claims against his employer. The plaintiff alleged in his initial complaint that "statements made [in March 2010] by [Lim-Tom and Broderick] along with Cecil Douglas . . . defamed the character of the Plaintiff, [as did] just the showing of the photo in and of itself as it resembled plaintiff." Dingle I Compl. 6.[5] Additionally, the plaintiff alleges that Lim-Tom and Broderick made defaming statements about him during management's investigation into the fight between him and Matthews, which were transcribed and "turned in as exhibits attached to plaintiffs amended complaint."[6] Dingle I Pl.'s Mem. in Opp'n 5.

"Defamation actions in federal court are governed by the liberal pleading requirements of Rule 8 . . . Under the federal standard, a pleading is sufficient only if it adequately identifies the purported communication, and an indication of who made the statement, when it was made, and to whom it was communicated." *Amar v. Hillcrest Jewish Ctr.*, No. 05–CV–03290 (RRM)(RML), 2009 WL 891795, at *7 (E.D.N.Y. Mar. 31, 2009) (internal quotations and citing references omitted). In order to state a claim for defamation under New York law, the plaintiff must allege that the defendant made "(1) a false and defamatory statement of fact, (2) concerning the plaintiff, (3) published without privilege or authorization to a third party by the defendant, (4) constituting fault as judged by, at a minimum, a negligence standard, and (5) causing special harm or constituting defamation per se." *Gristede's Foods, Inc. v. Poospatuck (Unkechauge) Nation*, No. 06–CV–1260 (KAM), 2009 WL 4547792, at *8 (E.D.N.Y. Dec. 1, 2009).[7] Additionally, for an employer to be liable for the

---

[5] The plaintiff has not reasserted these allegations in his amended complaint but refers to them. In the interest of liberally construing the plaintiff's pleadings, I consider these allegations to be incorporated by reference.

[6] Exhibits B and C, attached to the initial complaint, refer to several statements made by Lim-Tom and Broderick, but the plaintiff has not identified which ones are alleged to be defamatory.

[7] Defamation consists of the "'twin torts of libel and slander' . . . Spoken defamatory words are slander; written defamatory words are libel." *Colodney v. Continuum Health Partners, Inc.*, No. 03-CV-7276 (DLC), 2004 WL 829158, at *7

defamatory statements or actions of its employees, the statements or actions must have been made in the scope of their employment.  *See Rausman v. Baugh*, 248 A.D.2d 8, 10 (2d Dep't 1998) ("Under the doctrine of respondeat superior, an employer is answerable for the torts of an employee who acts within the scope of his or her employment.") (citing *Riviello v. Waldron*, 47 N.Y.2d 297 (1978)).

As to the plaintiff's allegation that he was defamed when his coworkers made statements about a picture of a nude black male which resembled him in March 2010, this claim should be dismissed for several reasons.  First, Entenmann's cannot be held liable for these statements and actions, as the employees were unquestionably acting outside the scope of employment.  This is evidenced by the fact that management launched an investigation to put an end to such behavior.

Second, the claim is barred by New York's one-year statute of limitations.  *Carlson v. Geneva City Sch. Dist.*, 679 F. Supp. 2d 355, 370 (W.D.N.Y. 2010) (citing references omitted).  Causes of action for slander begin to accrue when the statement is uttered.  *Gigante v. Arbucci*, 34 A.D.3d 425, 426 (2d Dep't 2006) (citing references omitted).  Causes of action for libel begin to accrue on the date of the publication.  *Toomey v. Farley*, 2 N.Y.2d 71 (1956).  Therefore, the plaintiff's defamation claims based on the publication of a nude photograph and the statements made in conjunction should be dismissed because they were 15 months old when the plaintiff initially brought suit in June 2011, and are precluded by the statute of limitations.

Third, the plaintiff has not alleged that the defamatory statements made against him caused special harm or that they amounted to defamation per se.  Special harm, defined as "the loss of something having economic or pecuniary value," *Albert v. Loksen*, 239 F.3d 256, 271 (2d. Cir. 2001), is "presumed when the defamatory statement takes the form of slander per se," *Weldy v. Piedmont Airlines, Inc.*, 985 F.2d 57, 61-62 (2d Cir. 1993).  The four established "per se" categories recognized

---

(S.D.N.Y. Apr. 15, 2004) (quoting *Albert v. Loksen*, 239 F.3d 256, 265 (2d Cir. 2001)). Libel can be "expressed in printing, in writing, or by symbols or pictures." *Clemons v. Wellpoint Companies, Inc.*, No. 11–CV–0084 (TM), 2013 WL 1092101, at *17, n. 58 (N.D.N.Y. Mar. 15, 2013).

by the Court of Appeals are "statements (i) charging [a] plaintiff with a serious crime; (ii) that tend to injure another in his or her trade, business or profession; (iii) that [a] plaintiff has a loathsome disease; or (iv) imputing unchastity to a woman." *Yonaty v. Mincolla*, 97 A.D.3d 141, 144 (3d Dep't 2012), *leave to appeal denied*, 20 N.Y.3d 855 (2013). New York courts have in the past "recognized statements falsely imputing homosexuality as a fifth per se category," but these holdings have been overruled as contrary to public policy. *Id.* Thus, absent some indication that Lim-Tom and Broderick's statements caused the plaintiff economic loss, the plaintiff has not stated a defamation claim under New York law.

As to the second defamation claim, stemming from statements made by plaintiff's coworkers during a May 3, 2010 investigation into the plaintiff and other employees' conduct, the argument may be made that the coworkers here were acting in the scope of their employment insofar as they owed a duty to cooperate with their employer's disciplinary procedures. But this line of reasoning cannot be reconciled with important policy considerations favoring employers' prompt investigation into workplace misconduct. After all, if an employer could be held liable for defamatory statements made by its employees while attempting to resolve a personnel dispute, it would discourage employers from attempting to resolve such disputes at all. *See Rausman*, 248 A.D.2d at 10 (noting that simply having a sexual harassment reporting policy does "not open [an employer] up to liability for defamation based on one employee's statements about another.").

The second defamation claim should also be dismissed because the statute of limitations has expired. As stated above, a cause of action for libel accrues when the material is published. Where, as here, oral statements are written down and placed in an employee's personnel file, publication for statutory purposes occurs "when the writing is released to its intended audience." *Stockley v. AT&T Info. Sys., Inc.*, 687 F. Supp. 764, 768 (E.D.N.Y. 1988). The fact that the plaintiff discovered the alleged libel at a later date is not relevant. *See Fleischer v. Institute for Research in Hypnosis*, 57 A.D.2d

20

535 (1st Dep't 1977); *accord Shamley v. ITT Corp.*, 869 F.2d 167, 172 (2d Cir. 1989) (holding that a defamation cause of action accrues when material is placed in a personnel file, rather than when it is discovered by plaintiff). Again, the plaintiff's claim for defamation should be dismissed because the publication of defamatory statements made by Broderick and Lim-Tom occurred on May 3, 2010, over one year before the plaintiff's complaint was filed in federal court.

While there is some suggestion that the statute of limitations should be tolled here,[8] the plaintiff's second defamation claim should also be dismissed because he has not adequately identified any communication that would serve as a basis for his claim. The plaintiff merely made conclusory allegations that Lim-Tom and Broderick made "defaming statements about [him]." Dingle I Pl.'s Mem. in Opp'n 5. While the plaintiff alleges that those statements are attached to his amended complaint, he does not identify which of the statements in these exhibits are alleged to be defamatory. Thus the plaintiff has not given the defendant sufficient notice of the communication complained of so as to provide a defense. *See Amar*, 2009 WL 891795, at *7. Finally, the plaintiff has again failed to allege any facts suggesting that the statements made against him during the investigation caused special harm or amounted to defamation per se.

For the forgoing reasons, the plaintiff's defamation claims should be dismissed.

*2. Violations of New York State and New York City Human Rights Laws*

In keeping with the Court's mandate to read a pro se plaintiff's submissions liberally and interpret them as raising the strongest arguments they suggest, *see, e.g., Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006), the plaintiff in this case may fairly be understood to also be asserting claims of discrimination, hostile work environment, and retaliation under the New York

---

[8] The plaintiff argues that the statute of limitations should not bar his claim because he was denied access to the defendant's investigation records when he requested them. Dingle I Am. Compl. 11, Ex. G, p. 24; Pl.'s Mem. in Opp'n 6-7. "Under New York law, [a] plaintiff might avoid the defamation statute of limitations by proving defendants fraudulently concealed the defamatory statements." *Knoll v. Merrill Corp.*, No. 02-CV-566(CSH). 2003 WL 22682271, at *4, n.6 (S.D.N.Y. Nov. 12, 2003).

State Human Rights Law (Executive Law § 296) ("State HRL") and New York City Human Rights Law (Administrative Code of the City of New York § 8-107) ("City HRL").

The substantive provisions of the State HRL parallel those of Title VII. *Ferraro v. Kellwood Co.,* 440 F.3d 96, 99 (2d Cir. 2005); *Costello v. New York State Nurses Ass.,* 783 F.Supp.2d 656, 681 (S.D.N.Y. 2011). The City HRL was also long thought of as coextensive to its state and federal counterparts, but has since been amended by the Local Civil Rights Restoration Act of 2005 (Administrative Code § 8-130) to provide greater deterrence against workplace discrimination. *See Williams v. New York City Hous. Authority,* 61 A.D.3d 62, 69-70 (1st Dep't 2009). Under the City HRL, plaintiffs may now state an actionable discrimination claim based on any discriminatory conduct rising above a "petty slight or trivial inconvenience," rather than being held to the "severe and pervasive" standard imposed by the State HRL and Title VII. *Id.* at 80 (quoting *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 81 (1998)); *also Mihalik v. Credit Agricole Cheuvreux N.A., Inc.,* 715 F.3d 102 (2d Cir. 2013) (internal citations and quotation marks omitted).

Of course, the threshold issue in claims of sexual discrimination under the City HRL and State HRL is still whether "the plaintiff was treated differently because of [his] sex." *Hernandez v. Kaisman,* 103 A.D.3d 106, 111-12 (1st Dep't 2012); *Williams,* 61 A.D.3d at 78 ("For [City] HRL liability. . . the primary issue. . . is whether the plaintiff has been treated less well than other employees because of her gender."). As already discussed with regard to the plaintiff's Title VII claim, the plaintiff in this case has proffered no facts tending to suggest that he was treated in a certain way because of his gender, rather than because of the personal animus of certain coworkers.

This leaves the plaintiff's retaliation claim. The City HRL's retaliation provision has also been amended to be impose a lower bar than its state and federal analogs, proscribing retaliatory action "in any manner," without regard to the measure's likelihood of dissuading employees from engaging in protective activity. *Williams,* 61 A.D.3d at 70. However, any adverse action taken

against an employee must still be linked to a retaliatory motivation. *Id.* at 71. Because the plaintiff has not plausibly alleged that the adverse actions taken against him by his employer were intended to retaliate for his complaints of sexual harassment, rather than to discipline him for legitimate workplace misconduct, he has also failed to state a claim under the State and City HRL's. Thus, his State and City HRL claims must also fail.

     *3. Breach of Contract*

     The plaintiff claims that Entenmann's breached the terms of an earlier settlement agreement made between it and the plaintiff, in which the parties resolved an unlawful termination claim made by the plaintiff under the CBA. In the settlement agreement, Entenmann's agreed to pay the plaintiff $13,000 "less usual statutory deductions," and also agreed not to contest the plaintiff's application for unemployment benefits. Dingle II Def.'s Mem. of Law, Ex. A, ¶¶ 3, 7. In return, the plaintiff agreed to waive "all claims under the Collective Bargaining Agreement. . . ." *Id.* at 4. The plaintiff acknowledges receiving payment of $6,513.86, which Entenmann's claims is the balance owed minus taxes withheld as back pay under a W2 form. The plaintiff contends, however, that the payment should have been issued untaxed, as front pay under a Form 1099. Dingle II Pl.'s Opp'n 3. The failure to pay the plaintiff the full $13,000, he argues, constitutes a breach of their contract.

     Under the Federal Insurance Contributions Act, employers are obligated to collect taxes related to employees' wages and transmit them to the government. 26 U.S.C. § 3102(a). "Wages" are defined as "all remuneration for employment, including the cash value of all remuneration (including benefits) paid in any medium other than cash." *Id.* at § 3121(a). "Remuneration for employment. . . constitutes wages even though at the time paid the relationship of employer and employee no longer exists between the person in whose employ the services were performed and the individual who performed them." Treas. Reg. § 31.3121(a)-1(i). Thus, applicable taxes must be

withheld even when wages are issued pursuant to a post-termination settlement agreement or court order, regardless of whether they are issued as back pay (lost compensation from the date of employee's unlawful termination to date of judgment) or front pay (lost compensation from date of judgment to reinstatement, or in lieu of reinstatement).   *See Noel v. Office of Mental Health,* 697 F.3d 209, 212-13 (2d. Cir. 2012).   Employers are not required to notify employees of their duty to withhold taxes from settlement payments, *White v. White Rose Food,* 237 F.3d 174, 180 (2d Cir. 2001), although the employer in this case did just that.

To determine the correct tax treatment of a settlement payment, courts "look first at the nature of the claim that led to the settlement, together with the remedies available under the law on which the claim giving rise to the settlement is based, to ascertain what the payment fairly represents." *Gerstenbluth v. Credit Suisse Securities (USA) LLC,* 728 F.3d 139, 144 (2d Cir. 2013).   In other words, "we ask, 'In lieu of *what* were the damages awarded?'" *Id.* (collecting cases).   Awards meant to compensate an employee for personal injuries, for example, are not considered wages and thus not subject to tax withholdings. 26 U.S.C. § 104(a); *see also Commission of Internal Revenue v. Schleier,* 515 U.S. 323, 329-30 (1995) (distinguishing plaintiff's claim of a "psychological" injury stemming from his unlawful termination from actual, tax-exempt personal injury).   Where the face of the agreement is unclear, courts may also look to the intent of the settling parties, and particularly the intent of the payor, in order to devise the "basic reason for the company's payment." *See Agar v. Commissioner,* 290 F.2d 282, 284 (2d Cir. 1961) (per curiam).

Here, the plaintiff unambiguously indicates that the parties entered into arbitration in order to resolve his unlawful termination claim.   *See* Dingle II Compl. ¶ 14.   The plaintiff did not seek reinstatement, so the damages he sought for his unlawful termination claim may only be construed as back pay.   *See Noel,* 697 F.3d at 213.   Whether construed as back pay or front pay, however, the payment is still subject to tax withholdings.   *Id.*

24

Although the plaintiff does not make this argument, he may have asserted that some portion of the $13,000 was offered not to resolve his unlawful termination claim, but to secure the general release from other potential claims under the CBA. However, this would still not preclude a finding that the entire amount must be taxed as wages. *See Taggi v. U.S.*, 35 F.3d 93, 96-97 (2d Cir. 1994) (holding that where employee received extra amount on top of his termination payment to secure employer's full legal release from potential liability, the whole amount was subject to tax withholdings as wages).

Thus, the record indicates that Entenmann's was correct to withhold taxes from the Settlement payment. The breach of contract claim made by the plaintiff against Entenmann's in his second lawsuit (Dingle II) should therefore fail.[9]

### 4. *Additional Claims*

The plaintiff has alleged general claims that he pleads as (1) breach of contract, premised on the allegations that Entenmann's failed to follow its internal policy on sexual harassment, breached the Collective Bargaining Agreement, and prevented the plaintiff from arbitrating his complaints, Dingle I Am. Compl., Addendum 3; and (2) "deliberate indifference," premised on similar allegations that Entenmann's was negligent in its investigation of the plaintiff's sexual harassment complaints, *id.,* Addendum 4. Entenmann's argues that this supplemental pleading is untimely. The court need not address the issue of timeliness since plaintiff's breach of contract claims are without merit. "As a general matter under New York law, a failure by an employer to follow its internal policies cannot form the basis of a breach of contract claim, unless, *inter alia*, mutual assent to enter into an implied-in-fact contract is shown." *Daniel v. Long Island Hous. P'ship, Inc.*, No. 08–CV–01455

---

[9] I pause only to note that the plaintiff recently filed a motion to compel Entenmann's to pay the remaining balance on the $13,000. Dingle II Pl.'s Mot. to Compel (ECF No. 22). Based on the above analysis, the motion should be considered moot insofar as it is grounded in the plaintiff's invalid breach of contract claim. However, the amount Entenmann's allegedly withheld, $6,486.14, constitutes approximately half of the promised $13,000. This seems on the higher end of what one would expect, yet absent an accounting, the Court has no way of knowing whether the actual amount withheld was proper. Accordingly, in an effort to resolve this matter without unnecessary litigation, I will schedule a conference to address the issue.

25

(JFB)(WDW), 2009 WL 702209, at *10 (E.D.N.Y. March 13, 2009) (citing *Maas v. Cornell Univ.*, 94 N.Y.2d 87 (1999)).  The plaintiff fails to allege any facts which "could plausibly support an assent by [the defendant] to deem its internal policies as an implied-in-fact contract."  *Id.*  Further, the plaintiff waived all potential claims he might make under the Collective Bargaining Agreement pursuant to an arbitration agreement resolving his unlawful termination claim.  Dingle III Compl. ¶ 15; Dingle II Def.'s Mem. of Law Ex. A, ¶¶ 3, 4, 6.  Accordingly, the claim for breach of contract should be dismissed.

In a supplemental filing, the plaintiff requests that "Deliberate Indifference [sic] be added to my already, amended complaint."  Dingle I Pl.'s Mot. to Amend (ECF No. 37).  In that submission, the plaintiff did not offer any allegations to support his claim.  In the plaintiff's memorandum of law opposing Entenmann's motion to dismiss, he states "the facts of the instant case support a claim for deliberate indifference in that the defendants consciously and recklessly disregarded the consequences of their acts and omissions and in that sense were not merely negligent, but embarked on a consistent and hostile campaign to purposely cause harm and or with the knowledge that harm would result."  Pl.'s Mem. Opp'n 10.  The Court is not aware of any New York claim of "deliberate indifference" – rather it appears that the plaintiff is relying on the standard announced by the Supreme Court as applied to a claim for deliberate indifference pursuant to the Eighth Amendment.  *See Farmer v. Brennan*, 511 U.S. 825, 835 (1970).  As discussed above, the plaintiff's constitutional claims should be dismissed since the plaintiff has not alleged that Entenmann's is a government actor.

Finally, in liberally construing the allegations, there is some suggestion that the plaintiff is attempting to plead a claim for intentional infliction of emotional distress.  "Under New York law, a claim for intentional infliction of emotional distress requires a showing of (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing,

severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Moore v. City of New York*, 219 F. Supp. 2d 335, 338-39 (E.D.N.Y. 2002) (quoting *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999)). "In New York, to establish a claim for intentional infliction of emotional distress, a plaintiff must show that defendant's conduct exceeded all bounds usually tolerated by decent society." *Kirwin v. New York State Office of Mental Health*, 665 F. Supp. 1034, 1040 (E.D.N.Y. 1987) (citing *Fisher v. Maloney*, 43 N.Y.2d 553, 557 (1978)). Here, the plaintiff asserts that he has become "stressed and depressed," and that he is being treated by a psychiatrist and a counselor as a result of the alleged sexual harassment. Dingle I Am. Compl. 10. He also states generally that he "has sustained a great deal of duress/mental anguish." *Id.* at 11.

In the first instance, assuming that the plaintiff's alleged emotional distress claim stems from the circulation of the nude photo (the only conduct at issue that could potentially be characterized as "extreme or outrageous"), his claim is barred by a one-year statute of limitations, since the plaintiff became aware of the photo's circulation in March of 2011 and did not bring suit until June 14, 2012.

Second, Entenmann's is not liable for its employee's circulation of the photo, because the employees did not do so in the scope of their employment. "[A]n employer is responsible for an employee's intentional tort only when the employee was acting within the scope of his or her employment when he or she committed the tort." *Girden v. Sandals Int'l*, 262 F.3d 195, 205 (2d Cir. 2001) (citing references omitted); *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1317 (2d Cir. 1995) ("[A]n employer is not liable for torts committed by the employee for personal motives unrelated to the furtherance of the employer's business.") (citing references omitted), *abrogated on other grounds by, Burlington Indus. v. Ellerth,* 524 U.S. 742 (1998); *Mirabadi v. Nurbakhsh,* No. 92-CV-7734 (MGC), 1995 WL 564174, at *2 (S.D.N.Y. Sept. 20, 1995) ("Under the doctrine of respondeat superior, an employer may be held liable for the acts of an employee if such acts are within the scope of employment and in furtherance of the employer's business."). While a determination of whether an

employee's actions fall within the scope of employment is ordinarily a question of fact, the Second Circuit has recognized that "it can be made as a matter of law in some instances." *Girden*, 262 F.3d at 205 (citing references omitted). To that effect, "New York courts consistently have held that sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context." *Swarna v. Al–Awadi*, 622 F.3d 123, 144–45 (2d Cir. 2010) (citing references omitted); *Girden*, 262 F.3d at 205 (collecting cases). In the instant case, the defendant's employees' alleged sexual misconduct was undoubtedly outside the scope of their employment, as demonstrated by the fact that the defendant held investigatory hearings into the plaintiff's sexual harassment complaint and suspended the employees pending resolution of that investigation. *See* Dingle I Am. Compl., Ex. B and C. Therefore, any claim for intentional infliction of emotional distress against Entenmann's would be without merit.

### C. Claims against Local 53

#### 1. Breach of Duty of Fair Representation

In his third complaint ("Dingle III"), the plaintiff charges Local 53 with breaching its duty of fair representation because it "failed to remedy [the hostile work environment] for a period of 3 years." Dingle III, Compl. ¶ 4. Specifically, the plaintiff charges that Mr. Weinbel, his union representative, failed to be present during the investigation held in April 2010 into the plaintiff's sexual harassment charge. *Id.* at ¶ 5. At a later meeting that same month, Mr. Weinbel allegedly refused to "give [the plaintiff] minutes of the meeting, nor [sic] of the investigation into plaintiff's complaint." *Id.* at ¶ 8. After the plaintiff filed a complaint against his representative, the minutes of the meeting were ultimately released. The plaintiff then discovered that during the meeting, "Mr. Weinbel allowed Broderick and Lim-Tom to make inflammatory, degrading and homosexual

statements against plaintiff." *Id.*  Lastly, the plaintiff alleges that Mr. Weinbel "failed to resolve" the ongoing harassment he claims to have experienced over the three years that followed.  *Id.*[10]

Contrary to Local 53's assertion, the plaintiff did not release Local 53 from liability for all potential claims under the CBA, having only done so for claims that were already pending.  *See* Dingle II Def.'s Mem. of Law, Ex. A, ¶ 6.  Nonetheless, his claim fails because the statute of limitations has expired.  The statute of limitations on a duty of fair representation claim against a union is six months.  *See DelCostello v. Int'l Bd. of Teamsters*, 462 U.S. 151, 155 (1983); *Phelan v. Local 305 of United Ass'n of Journeymen*, 973 F.2d 1050, 1060 (2d Cir. 1992).  "A cause of action based on the duty of fair representation accrues when the union members know or reasonably should know that a breach of that duty has occurred."  *Eatz v. DME Unit of Local Union Number 3 of Int'l Bd. of Elec. Workers*, 794 F.2d 29, 30 (2d Cir. 1986).  Here, the plaintiff seeks to assert a claim based on events that occurred almost exclusively in April 2010. Even assuming the statutory period should be tolled in view of the plaintiff's apparent belief that Mr. Weinbel's breach was ongoing, it could only extend, at the latest, until his termination in September 2012, yet the plaintiff did not file suit against Local 53 until eight months later, in May of 2012.

Thus, while it is unlikely that the facts alleged by the plaintiff are capable of overcoming the highly deferential standard for duty of fair representation claims set forth in *Vaca v. Sipes*, 386 U.S. 171 (1967), it is unnecessary for this Court to address his claim on the merits because it is precluded by the applicable six-month statute of limitations.

---

[10] In a supplement to the plaintiff's amended Dingle I complaint, he also seeks to hold Local 53 jointly and severally liable for the claims made against Entenmann's in that case.  He argues that this is appropriate because Local 53 and Entenmann's are "bound together" by the CBA.  Dingle I Pl.'s Mot. to Amend (ECF No. 37).  However, unlawful conduct may not be imputed to an innocent party simply because the party is in an unrelated contractual agreement with a liable party.  Nevertheless, the fact that the claims made in Dingle I fail against Entenmann's means that they also fail against Local 53.

*2. Defamation*

Finally, the plaintiff asserts that Local 53, through its agent Mr. Weinbel, "allowed the defamation of plaintiffs [sic] character by three other employees" when they "ma[d]e inflammatory, degrading and homosexual statements against plaintiff" during an April 2010 meeting.  Dingle III Compl. 5, ¶ 8.  This claim fails against Local 53 for all of the same reasons it fails against Entenmann's.  First, the one-year statute of limitations has long since expired.  Second, the plaintiff has not identified any specific defamatory statements, offering instead only conclusory characterizations of his co-workers' comments.  Third, the plaintiff has not identified any special harm resulting from the allegedly defamatory statements.  And fourth, Local 53 is not liable for the defamatory statements of others.  Thus, the plaintiff's defamation claim against Local 53 should be dismissed.

**CONCLUSION**

In accordance with the above considerations, the undersigned hereby recommends that each of the plaintiff's complaints be dismissed without leave to replead.

     *       *       *       *       *       *

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this report.  Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see, e.g., Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985); *Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002);  *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298 (2d Cir.), *cert. denied*, 113 S. Ct. 825 (1992); *Small v. Secretary of Health and Human Serv.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

                                        Respectfully recommended,

                                        *Viktor V. Pohorelsky*
                                        VIKTOR V. POHORELSKY
                                        United States Magistrate Judge

Dated: Brooklyn, New York
           December 16, 2013