ORIGINAL

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK..................x
ROBERT DINGLE JR.,

                        Plaintiff,
        -v-                                         11-CV-2879 (CBA) (VVP)

BIMBO BAKERIES USA/ENTENMANN'S
..............................Defendants......x
ROBERT DINGLE JR.,

                        Plaintiff,
        -v-                                         13-CV-3913 (CBA) (VVP)

ENTENMANN'S/BIMBO BAKERIES USA
..............................Defendants......x
ROBERT DINGLE JR.,

                        Plaintiff,
        -v-                                         13-CV-4141 (CBA) (VVP)

BAKERY CONFECTIONARY, TOBACCO
WORKERS AND GRAIN MILLERS
INTERNATIONAL UNION, LOCAL
NO. 53
..............................Defendants......X
```

**Opposition to Magistrates report and recommendation**

FILED Rec'd
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y. 2/5/14

★ JAN 30 2014 ★

BROOKLYN OFFICE

**Plaintiff's Case against Entenmann's/ Bimbo Bakeries Should not be Dismissed**

**13-CV-3913**

    The primary issue in this case is breach of contract, that is defendants improperly taxed plaintiffs settlement for $13,000 after arbitration for unlawful termination. Contrary to magistrates assertions any taxes taken must be taken in accordance with 26 C.F.R. Subd. 31.3402(g)(20090). It should be noted that the latter is also the recommendation of the New York City Bar – Committee on Labor & Employment Law. A settlement award constitutes supplemental wages and is taxed differently from regular wages. In addition both the IRS and the second circuit has recognized that when a person cannot or is not allowed to return to work he should be paid front pay which is pay calculated in consideration of an individuals expected work life and future earnings, Tyler v. Bethlehem Steel Corp. 958 F2d 1176. Plaintiff also challenges the settlement amount based on the latter basis because it is unconscionable or only beneficial to the payee. As defendants have espoused, "There is no breach of contract only where applicable taxes have been taken out of a settlement award." I must also point out that In accordance with IRS regulations when the award is for discrimination or emotional duress the award is non-taxable. Unlawful Termination is a form of discrimination.  As the magistrate pointed out " the taxes seem to be a bit high." Plaintiff is in receipt of defendants explanation of deductions and they taxed him as if he was employed and he was fired at least four months prior to the arbitration. The magistrate contends that the money can be recovered as income tax; however, to recover the money in that manner would further cause a further breach of the arbitration agreement. In addition, the IRS would still require defendants to submit a reason why the money was paid and if the reason given appears frivolous they do not have to except it. Now defendants have submitted documentation of deductions but, it appears that they taxed plaintiff as if was still employed by the company. In the absence of stating wether or not the money was paid as back pay or front pay the issue should be addressed and proper and lawful relief grated.

    It must also be pointed out that plaintiff brought this latter complaint because, contrary to magistrates opinion, plaintiff was not fired for threatening Cecil Douglas. In fact the letter of termination from the company does not state why plaintiff was fired. I must point out that, that at the arbitration attorney for the defendants claims that he was fired, "for making too many complaints to the company's complaint hotline, which constitutes a termination for whistle blowing," it was at that time the arbitrator stopped the hearing and advised plaintiff to negotiate a settlement and she told plaintiff, in no uncertain terms, "he had gone through enough and she felt if she were to send him back to his job at Entenmann's because she feared things would only get worse for him. In addition, it must be noted that plaintiff was suspended for using profanity towards Cecil Douglas  at a meeting where fleet supervisor Tom Leggio and shop steward James Moore were present, it was Douglas who had plaintiff fired after 3 years of spreading lies about plaintiff to management.  After that meeting plaintiff was suspended without pay for one month because HR manager Orion Dechristopher decide to launch a witch hunt investigation to substantiate more bogus claims by Douglas that plaintiff was a threat to him. Finally, after one month plaintiff was fired based on an ambiguous hearsay statement made by shop steward

James Moore. Moore was supposed to attend the arbitration but mysteriously disappeared and could not be reached by phone. For all the reasons set forth thus far plaintiff's claim of breach of contract should be granted. Finally, with respect to this issue the magistrate said he disagrees with the IRS on how supplemental wages are taxed, but defendants have filed case law that supports breach of contract, so it is contradictory to agree with defendants and still deny plaintiff relief. On the other hand, it must be emphasized that award for front pay is feasible, fitting and in accordance with the holdings and standard of law of the second circuit. The second circuit has also held that front pay awards are a matter for a judge and/or the jury to decide, Tyler V. Bethlehem Steel Corp. 958 F2d 1176, at 1189, Whittlesy V. Union Carbide Corp. 742 F2d 724 (2d Cir. 1984).

### The Magistrates Report and Recommendation with Regard to Dismissal of Plaintiffs Case (2:13-CV-03913-CBA-VVP) Must Be Rejected Because Even If The Court Overlooks All The Facts Of The Case And Can't Find a Causal Connection Plaintiff Was And Is Still A Victim Of Unlawful Termination

Even considering the magistrates theory that there is no causal connection between the plaintiffs sexual harassment claim and dismisses every other fact of the case you still have plaintiff being dismissed from his job unlawfully and a settlement award contract that has been breached by defendants. It must be emphasized that plaintiff was unlawfully terminated and a settlement was agreed upon because the arbitrator and both the defendants acknowledged the latter. Defendants agreed to settle and it must be recognized that no company is going to pay a settlement, nor a recommendation to settle by an arbitrator if there was no wrongdoing it is only logical that they would not have wanted to settle nor would they have made no agreement. Now what is interesting is that at the arbitration hearing attorney for the defendants, in no uncertain terms that, plaintiff was fired because, he made too many complaints to the company's 1-800 hotline and that there was a photo that was alledgedly of Mr. Dingle naked passed around at the depot that Mr. Dingle could not get over and because of that the company did not Mr. Dingle to return to work." What is appaulling is that the magistrate is latching onto small segments of the case, twisting facts and attempting to stretch the law in order to deny plaintiff relief, for that reason alone the magistrates report and recommendation must be denied, for at the arbitration it is clear that plaintiff was fired for , "whistle blowing", and initially a claim was made that he made a hearsay statement that was ambiguous, both of which a unlawful under the laws of New York State and Fair Labor law.

The magistrate makes no reference to exhibit submitted by plaintiff that the brakes on a truck that has a gross weight of over 25,000 lbs. was disabled and could have caused death or other physical injury. Moreover, the magistrate never considers the fact that Douglas was the only other mechanic at the Brooklyn depot and the only person capable of disabling the brakes on that vehicle. Plaintiff must prevail on all of the issues set forth in plaintiffs complaint 2:13-CV- 031913, because defendants did not pay the amount agreed upon at the arbitration by improperly taxing it or otherwise not following applicable laws thereby violating public policy thus they breached the contract and that contract must be allowed to stand in court. The court cannot now ignore the rules nor circumvent public policy by requesting that plaintiff recover the remainder of the money from income tax the latter actually, further breaches the contract. Firstly recovering the money from income tax would require that defendants state a reason why the money was paid in accordance with IRS rules and regulations, see exhibit A attached hereto.

which is another question the plaintiff has consistently urged the court to compel defendants to answer. The court should always consider the underlying policies to determine whether a rule should be applied to a specific factual dispute. And now the court should not stretch the law, nor ignore public policy, as doing so would only serve to infringe on plaintiffs fundamental and constitutional rights. If the claims are denied then Entenmann's would be being allowed to use the court to circumvent the law and do this type of thing to somebody else in the future.

### Plaintiffs Claim of Emotional Distress Must Be Granted

Plaintiff is allowed to seek seven basic types of damages in employment law cases, among the seven are emotional distress, lost compensation and compensation for medical expenses, all of which plaintiff is now seeking damages for. Despite the magistrates opinion emotional distress is an integral claim under the law for unlawful termination. No offer nor inference was made either in the settlement agreement as to emotional distress and therefore should be assessed in court now. From the very beginning of the incidences for which we are now before the court plaintiff has suffered emotional distress, he has a neuro muscular illness that has been exaserbated because of the stress of being subjected to a hostile work environment and now being unemployed for over a year. In addition, plaintiff has suffered with anxiety and was prescribed medications for sleep, as well as Sertraline to calm his nerves. Finally, in October 2013 plaintiff had to be hospitalized for stomach problems and under went 2 operations for which he had no coverage after being ulawfully terminated, and incurred a bill for $90,000 dollars. All of these things should be taken into consideration when assessing plaintiff's claims, and the original settlement which the defendants breached.

### Contrary To the Magistrates Opinion Douglas, Lim-Tom and Broderick Were All Agents of the Company

Lim-Tom was a loading dock foreman, Broderick was an assistant loading dock foreman and Douglas was a mechanic shop foreman and as such were responsible for making decisions and recommendations for the hiring and firing of individuals under their supervision. They also distributed work duties and delegated responsibilities to other individuals under their supervision. Douglas was not only plaintiff's immediate supervisor but he made decisions with regard to the daily functions of the mechanic shop and reported daily to head fleet supervisor Pete Villa, whom plaintiff had no contact with at all. Under 29 USC subd. 152 the term employer as, "any person acting as an agent of an employer directly or indirectly." Under 29 USC 152(11) " The term supervisor means any individual having authority in the interest of the employer to hire, fire, transfer, suspend, lay off, recall, promote, discharge, assign, reward or discipline other employees and use independent thinking." It goes on to say, "In determining whether any person is an agent of another person is acting as an agent of another person so as to make such other person responsible for his acts, the question of wether the specific acts performed were actually authorized or subsequently ratified shall not be controlling." Thus Entenmann's/Bimbo bakery is liable for the actions and conduct of Lim-Tom, Broderick and Douglas. Moreover the company is liable because they did not make a good faith effort to curtail conduct which violated Title VII, Kostad V. American Dental Association 527 US 526, at p.545 (1999).

3

### Plaintiff's Title VII Claim Should Not Be Dismissed

### Because He Did Engage in Protected Activity

Contrary to the magistrates report the actions of the defendants did violate the law, because it changed the terms and conditions of his employment, a right guaranteed by the United States Constitution, as well as the New York State Constitution. Moreover, HR manager, Rina Carpano, used and divulged plaintiffs criminal record as leverage at a meeting to discourage plaintiff from pursuing the complaint against the company for not addressing complaints he had submitted against Lim-Tom, Broderick. The latter violated the law in that plaintiff is a member of a protected class , under Human Rights law and New York State Law which give explicit protection to employees with criminal records. The manner in which Ms. Carpono used plaintiffs record indicates that she refused to do anything about the incidences of wrong doing against plaintiff because he had a record and constitute desparate treatment and discrimination and because she did not take action against plaintiff's victimizers she also violated his tight to equal protection of the law, a right guaranteed by the United States Constitution and prohibited under Title VII and it violated EEOC guidelines. The protected activity was the complaint plaintiff filed in accordance with company policy and he was not treated the same as other employees at the Brooklyn depot where he worked. Again I must emphasize that, contrary to the magistrates assertion plaintiff was not suspended for threatening Douglas, he was suspended for using profanity against Douglas for telling him (Douglas) get the F...... out of a room in which plaintiff called a meeting to resolve issues about Douglas relating false information to management about plaintiff.

### Plaintiff Was the Victim of Hostile Work Environment in Violation of Title VII

Plaintiff was the victim of a hostile work environment in violation of Title VII. The magistrate makes two claims , first he says that the length of time that plaintiff was subjected to harassment is longer than the the period of time accepted in previous cases. Those cases I am certain, are not the exact same as plaintiffs case. Secondly, he contends that there are not enough facts to support retaliation, thus I will elaborate further. After the altercation with Matthews plaintiff notified the police, and because there was police involvement Matthews was terminated. Then after plaintiff filed a complaint against Broderick and Lim-Tom they were both suspended for two weeks pending the outcome of the investigation. During that time each member of the management team had to take turns working with a skeleton crew and the delivery drivers could'nt leave with there loads on time an atmosphere was created by Gadero, Ianiro and there cohorts that placed blame on plaintiff and that is when the atmosphere became hostile against plaintiff. The firing of Matthews also incensed Ianiro since he liked Matthews and he was Matthews direct supervisor, thus a campaign was launched to attempt to make plaintiff appear to be non credible, belligerent , a trouble maker and incompetent. I must emphasize that no consideration has been given by the magistrate that a the brakes on a truck was disabled and

could have caused death and/or physical injury. Despite all of the attacks plaintiff stayed and fought to keep his job and that is what prolonged the harassment. As far as magistrates contention that, "there is no evidence that plaintiff believed he was the victim of sexual harassment," is concerned plaintiff believed in the company he worked for and trusted that they would enforce company rules and regulations in a totally fair and impartiall manner which they did not do which in and of itself is stressful and created metal duress and anguish.

I must also point out that plaintiff was an assiduous worker and mechanic and head fleet supervisor Pete Villa and other members at the Brooklyn Depot often stated that, " they did not have a problem with plaintiff's work, and is'nt that the primary requirement for holding a job? If I did such a good job why was I stigmatized and fired? Why did the antagonism and harassment occur only after plaintiff filed a complaint against Lim-Tom and Broderick. It could not have been personal animus because Lim-tom , Broderick and Matthews stated that they never had a problem with plaintiff before the passing of the photo and the complaint he filed. So where then does personal animus come in? Furthermore, plaintiff was more than congenial with Matthews, Broderick and Lim-Tom prior to that so then why would they all of a sudden develop hatred and why would it happen only after plaintiff indulged in whistle blowing? Plaintiff had an impeccable work record yet he recieved bogus write ups for poor work performance for made up rules after indulging in protected activity, how can all that be a coincidence?

### Plaintiff's Claims Should Be Addressed Because He Is An Ex-Offender And Part Of A Protected Class

### Right Violated By HR Manager Rina Carpano(1:11-CV-02879)

Plaintiff is an ex-offender and as such his record should not have been used at a meeting where plaintiff complained to Rina Carplano about her and the company ignoring complaints he had brought against Lim- Tom and Broderick and nothing was done even after he submitted audio to her in which Lim-Tom admitted that Broderick had sent the photo. Although, Carpano claimed that plaintiff had never told the company about his record. Prior to that meeting Douglas had told plaintiff that he had heard that plaintiff served a prison sentence for homicide. First of all plaintiff did tell the truth about his criminal conviction and since his conviction was totally unrelated to his job title or job duties it should not have been at issue. Secondly records of plaintiff's conviction should have remained confidential and since they were'nt kept confidential that is the reason a person like Broderick could go to an HR meeting, where he is being accused by plaintiff and say plaintiff threatened to shoot his supervisor and other stories concocted to paint plaintiff as belligerent and violently out of control. It appears then that Carpano nor the company did anything to plaintiff's antagonizers and harassers. The latter violated plaintiffs rights to equal protection of the law, constituted bias and deliberate indifference. Moreover, it appears from the record that Carpano did not terminate Lim-Tom nor Broderick in accordance with company policy because plaintiff is an ex-offender, treatment that is desparate, discriminatory and violates plaintiffs human rights as being a member of a protected by the rules regulations,laws and rules if THE NEW YORK STATE DIVISION OF HUMAN RIGHTS. Therefore, Ms. Carpano refused to do properly address plaintiff's grievance because he is an ex-offender.(the court has the audio).

### The Case Against the Union, Local 53 BCTGM Should Not Be Dismissed

Contrary to the magistrates report and recommendation the union is liable. First of all they were aware of what happened, plaintiff even told union representative Joe Wienbel about the audio he had that implicated Lim-tom and Broderick and he did nothing. Moreover, he concealed their statements for almost two years, never once investigating what they said, nor interviewing plaintiff to find out if thre was any truth to it. In fact it was the same belligerent, aggressive stigma that was espoused by Lim-Tom and Broderick that Douglas used to get plaintiff fired, it is an unfair labor practice to cause or attempt to cause an employer to discriminate against an employee 29 USCS subd 158, sec. 729. Plaintiff is not an attorney and should not be held to the same standard as an attorney. Moreover plaintiff only found out about the violations of the union after receiving a copy of the collective bargaining agreement.

## Conclusion

At the very least the court should compel the defendants to reinstate plaintiff with clearly defined stipulations and compel them to reinstate him so that he receives back pay from the date he was fired until the date of reinstatement as well as the $90,000 to cover his medical bill since he lost medical coverage after being unlawfully terminated to be paid for discrimination which it was and credit his time in such a way that he is vested. The court should not dismiss plaintiff's case because doing so would allow the defendant's to use the court to circumvent the law and deprive plaintiff of fundamental rights and further allow them to commit these atrocious acts against others. If reinstatement is not an option, as was the situation at the arbitration, and since the defendants breached the settlement agreement then a new settlement must be established that, adequately, gives at least a 5 year consideration of future wages, and the fact that it will take that tme or thereabouts to find a similar job. In addition to the latter, plaintiff would still want the $90,000 for medical expenses and damages for emotional distress. The magistrates report and recommendation should be rejected because he mis-quoted the facts of the case and therefore his recommendation is not based on the facts or the law as it applied to plaintiff. Finally plaintiff's cases should not be dismissed and hearings should be held to ascertain why certain things were done rather than speculating.

Respectfully Submitted,

Robert Dingle, Jr.

*/s/ Robert Dingle Jr.*

# EXHIBIT A

# TAX TREATMENT OF RECOVERIES IN EMPLOYMENT DISPUTES

The tax treatment of settlement payments and trial/arbitration awards in employment related disputes is a complex area with many uncertainties. This pamphlet is a brief overview of some of the general principles involved.[1] The pamphlet focuses on: (i) which payments are considered income to an employee and (ii) which payments constitute "wages" for payroll tax and withholding purposes.[2]

A.     **Recoveries in Employment Law Cases**

Employees may receive settlement payments and/or an award of damages for a variety of causes of action including: breach of contract, violation of whistleblower statutes, violation of wage and hour laws, and violation of anti-discrimination/retaliation statutes.

If an employee is successful at trial or arbitration, he or she is entitled to different categories of damages depending on the claim he or she has won. Each type of damage is taxed differently.

Settlements can be characterized as compensation for a portion of the potential damages that an employee could have received if the case had gone forward. Settlements are therefore taxed according to the type of potential damages for which the employee is being compensated. A settlement agreement should allocate payment to taxable wages, subject to withholding and reported on Form W-2, and taxable, non-wage recoveries (e.g., amounts received on account of emotional distress or attorneys' fees), which are includable in income but not subject to employment tax or withholding. Allocations in a settlement agreement will generally be given deference provided the agreement was entered into by the parties in an adversarial context and negotiated at arms' length. However, an allocation in a settlement agreement is not binding on the IRS if other facts and circumstances indicate that the parties actually intended the payment to be made for a purpose other than its stated purpose.[3] The settlement agreement should be explicit as to the reason for the characterization of a particular portion of the allocated settlement amount and whether a Form W-2 or Form 1099 will be issued. Finally, consistency in tax reporting among the parties is critical.

There are seven basic types of damages in employment law cases: 1) lost compensation, 2) emotional distress, 3) physical injuries, 4) compensation for medical expenses, 5) punitive damages, 6) interest on awards, and 7) attorneys' fees. Each of these types of damages is taxed differently. The manner in which each category of damages is taxed is discussed below.

---

[1]     See Robert W. Wood, Taxation of Damage Awards and Settlement Payments (3d ed. 2005) for a more in-depth treatment of this subject matter.
[2]     This pamphlet does not deal with deferred compensation payments that may require special treatment. Such payments are addressed in 26 U.S.C. § 409A (2008).
[3]     Robinson v. Comm'r, 102 T.C. 116 (1994).

1

