UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------X

ROBERT DINGLE, JR.,

                          Plaintiff,

          -against-                                    1:11-cv-02879-CBA-VVP

BIMBO BAKERIES USA,

                          Defendant.

-------------------------------------------------X

ROBERT DINGLE, JR.,

                          Plaintiff,

          -against-                                    2:13-cv-03913-CBA-VVP

ENTENMANN'S/BIMBO Bakeries USA,

                          Defendant.

-------------------------------------------------X

**DEFENDANT'S MEMORANDUM OF LAW IN RESPONSE
TO PLAINTIFF'S OPPOSITION TO THE MAGISTRATE'S REPORT**

JACKSON LEWIS P.C.
*ATTORNEYS FOR DEFENDANTS
BIMBO BAKERIES USA
ENTENMANN'S/BIMBO BAKERIES*
666 Third Avenue, 29th Floor
New York, New York 10017
(212) 545-4000

Attorney(s) of record:
          A. Robert Fischer
          Kristin L. Witherell

TABLE OF CONTENTS

**Page**

**TABLE OF AUTHORITIES** ................................................................................................. ii

**I.    PRELIMINARY STATEMENT** ........................................................................... 1

**II.   SUMMARY OF ARGUMENT** .............................................................................. 1

**III.  RELEVANT FACTS** ............................................................................................ 2

**IV.   PROCEDURAL HISTORY** ................................................................................. 4

**V.    THE REPORT SHOULD BE ADOPTED** ........................................................... 5

    **A. Relevant Standard** ............................................................................................. 5

    **B. Defendant Did Not Breach the Settlement Agreement** ................................... 6

       i.   Plaintiff's Settlement Payment Was Properly Taxed ................................... 6

       ii.  Defendant Paid the Settlement Amount Consistent With the Terms of the Settlement Agreement ........................................................................................... 7

    **C. Plaintiff Cannot Maintain His Federal and State Law Claims** ....................... 8

       i.   Retaliation under Title VII ........................................................................... 8

       ii.  Emotional Distress ..................................................................................... 10

       iii. Hostile Work Environment ......................................................................... 12

       iv.  Discrimination and Retaliation Claim Based on Criminal Conviction ....... 13

**VI.   CONCLUSION** ................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Adams v. New York City Transit Auth.,
   88 N.Y.2d 116, 666 N.E.2d 216, 643 N.Y.S.2d 511 (N.Y. 1996) ...........................................11

Anand v. New York State Dep't of Taxation & Fin.,
   No. 10-CV-5142 (SJF)(WDW), 2013 U.S. Dist. LEXIS 104291 (E.D.N.Y. July 25,
   2013) ...............................................................................................................................15

Burlington N. & Santa Fe Ry. v. White,
   548 U.S. 53 (U.S. 2006).........................................................................................................13

Chukwueze v. NYCERS,
   891 F. Supp. 2d 443 (S.D.N.Y. 2012)......................................................................................12

Conboy v. AT&T Corp.,
   241 F.3d 242 (2d Cir. 2001)....................................................................................................10

Deras v. Metro. Transp. Auth.,
   No. 11-CV-5912, 2013 U.S. Dist. LEXIS 40456 (E.D.N.Y. Mar. 22, 2013).........................12

Drumm v. SUNY Geneseo College,
   486 Fed. Appx. 912 (2d Cir. N.Y. 2012) ...............................................................................8

EEOC v. Bloomberg L.P.,
   No. 07 Civ. 8383 (LAP), 2013 U.S. Dist. LEXIS 128388 (S.D.N.Y. Sept. 9, 2013).............13

Fattoruso v. Hilton Grand Vacations Co.,
   525 Fed. Appx. 26 (2d Cir. N.Y. 2013) .................................................................................8

Forrest v. Jewish Guild for the Blind,
   786 N.Y.S.2d 382 (2004)........................................................................................................14

Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.,
   136 F.3d 276 (2d Cir. 1998)....................................................................................................9

Gerstenbluth v. Credit Suisse Sec. (USA) LLC,
   No. 12-4125-cv, 2013 U.S. App. LEXIS 17841 (2d Cir. Aug. 27, 2013) ...............................7

Goodman v. Port Auth. of N.Y. & N.J.,
   No. 12-2329-JDT-cgc, 2013 U.S. Dist. LEXIS 134921 (S.D.N.Y. Sept. 18, 2013) ...............9

Hernandez v. Bankers Trust Co.,
   773 N.Y.S.2d 35 (2004)..........................................................................................................14

Horne v. Buffalo Police Benevolent Ass'n,
No. 07-CV-781C, 2010 U.S. Dist. LEXIS 53152 (W.D.N.Y. May 25, 2010) ..........................8

Kurian v. Forest Hills Hosp. 10201 66th Rd,
No. 12-CV-4539 (ADS) (GRB), 2013 U.S. Dist. LEXIS 99120 (E.D.N.Y. July 15,
2013) ...............................................................................................................................................13

La Torres v. Walker,
216 F. Supp. 2d 157 (S.D.N.Y. 2000).........................................................................................5

Martinez v. N.Y.C. Dep't of Educ.,
No. 04-CIV-2728 (LTS)(DFE), 2008 U.S. Dist. LEXIS 41454 (S.D.N.Y. May 27,
2008) ...............................................................................................................................................13

McDonaugh v. Astrue,
672 F. Supp. 2d 542 (S.D.N.Y. 2009)........................................................................................1

Milano v. Astrue,
No. 05-CV-6527, 2008 U.S. Dist. LEXIS 74488 (S.D.N.Y. Sept. 26, 2008)............................5

Molefe v. KLM Royal Dutch Airlines,
602 F. Supp. 2d 485 (S.D.N.Y. 2009).........................................................................................5

Nelson v. Smith,
618 F. Supp. 1186 (S.D.N.Y. 1985)............................................................................................5

Pace v. Ogden Servs. Corp.,
692 N.Y.S.2d 220 (1999)............................................................................................................14

Pinkney v. Progressive Home Health Servs.,
No. 06-CV-5023, 2008 U.S. Dist. LEXIS 55034 (S.D.N.Y. July 21, 2008) ............................6

Quinones v. Eihab Human Services, Inc.,
No. 150169-08, 2009 N.Y. Misc. LEXIS 5729 (N.Y. Sup. Ct. May 22, 2009), at *8.............14

Smith v. HBO,
No. 12-CV-2177 (MKB), 2013 U.S. Dist. LEXIS 73333 (E.D.N.Y. May 22, 2013) .............12

Smith v. United States Army Corps of Eng'rs,
829 F. Supp. 2d 176 (W.D.N.Y. 2011) .....................................................................................10

Stuto v. Fleishman,
164 F.3d 820 (2d Cir. 1999).......................................................................................................10

Tyler v. Bethlehem Steel Corp.,
958 F.2d 1176 (2d Cir. N.Y. 1992).............................................................................................6

United States v. Raddatz,
   447 U.S. 667 (1980)...................................................................................5

Yarde v. Good Samaritan Hosp.,
   360 F. Supp. 2d 552 (S.D.N.Y. 2005).......................................................15

**STATUTES**

26 U.S.C. §3102(a) .....................................................................................7

28 U.S.C. § 636(b)(1)(C) .............................................................................5

NY Corr. Law Article 23-4 .........................................................................13

Supplemental Wage Payment section of the Internal Revenue Code ...........6
   26 C.F.R. Subd. 31.3402(g)(20090)

**OTHER AUTHORITIES**

Fed. R. Civ. P. 72(b) ...............................................................................1, 5

Title VII ...............................................................2, 4, 7, 8, 9, 10, 13

Title 8 of the NY City Administrative Code.............................................13

United States Constitution ...........................................................................2

## I.      PRELIMINARY STATEMENT

Pursuant to Rule 72(b) of Federal Rules of Civil Procedure, Defendant, named as Bimbo Bakeries USA in the case captioned *Robert Dingle Jr. v. Bimbo Bakeries USA*, No. 1:13-cv-3913 (JFB) (AKT) 1:11-cv-02879-CBA-VV ("Dingle I") and Entenmann's/Bimbo Bakeries USA ("Defendant") in the case captioned, *Robert Dingle Jr. v. Entenmann's/Bimbo Bakeries USA*, No. 2:13-cv-03913-CBA-VVP ("Dingle II") (collectively referred to as "Defendant"),[1] hereby responds to the Opposition to Magistrates [sic] Report filed by Plaintiff, Robert Dingle, Jr. ("Plaintiff") on or about January 30, 2014 ("Opposition") [Dingle I, Doc. No. 55; Dingle II, Doc. No. 31].  As set forth more fully below, the Report and Recommendation issued by Magistrate Judge Viktor V. Pohorelsky [Dingle I, Doc. No. 52; Dingle II, Doc. No. 24] ("Report") should be adopted in its entirety, and the motions to dismiss filed by Defendant directed to the Amended Complaint in Dingle I [see Dingle I, Doc. 39, 40, 42] and the Complaint in Dingle II [see Doc. Nos. 17, 18, 21] should be granted.[2]

## II.      SUMMARY OF ARGUMENT

Plaintiff's objections, although voluminous, do not advance any arguments targeted at the reasoning in the Report.  The objections essentially recount the alleged factual underpinnings of Plaintiff's claims in his Amended Complaint and Complaint.  Such perfunctory objections, not aimed at particular findings in the Report, do not trigger de novo review of the Magistrate's Report.  McDonaugh v. Astrue, 672 F. Supp. 2d 542, 547 (S.D.N.Y. 2009).

---

[1] Bimbo Bakeries USA is a trade name.  As of January 2010, Entenmann's, Inc. has not been a separate, actively registered business entity.  Entenmann's/Entenmann's, Inc. operates solely as a brand.  Stroehmann Line-Haul LP (not "Bimbo Bakeries USA" or "Entenmann's/Bimbo Bakeries USA") was the employer of Plaintiff.  As such, Defendant hereby requests that Stroehmann Line-Haul, L.P. be substituted as Defendant in both actions.

[2] For brevity, Defendant objects to any arguments in Plaintiff's Opposition not specifically addressed in this Response.  Defendant, respectfully, requests that those arguments be rejected and the Report and Recommendation accepted in its entirety.

In addition, Plaintiff's Opposition fails to raise any reason why the Magistrate's Report should not be adopted. Indeed, his primary claim, regarding breach of the Settlement Agreement, contradicts the relevant facts, including Defendant's payment to Plaintiff of $13,000, less applicable taxes, as required by the very terms of the Agreement. Additionally, Plaintiff has not pled sufficient facts to sustain his claims for retaliation under Title VII, which allege nothing more than a personality conflict at work. Similarly, Plaintiff's complaints do not sufficiently plead claims for intentional infliction of emotional distress or hostile work environment, or claims for retaliation and discrimination related to his criminal conviction.

The Court should adopt the portions of the Report to which no objection has been made and which are not facially erroneous. Namely, Plaintiff made no objection to the sections on due process and equal protection under the Fifth and Fourteenth Amendments of the United States Constitution; defamation; discrimination, hostile work environment, and retaliation claims under the New York State and New York Human Rights Laws; deliberate indifference; and, additional claims that Defendant violated its internal policies.

Accordingly, Defendant respectfully requests that the Report be adopted in its entirety, including that Plaintiff not be granted leave to amend his pleadings in Dingle I and Dingle II.

## III.   <u>RELEVANT FACTS</u>

In Dingle I and Dingle II, Plaintiff claims a photograph of a man resembling Plaintiff was distributed throughout the Defendant's Brooklyn Depot where Plaintiff worked. <u>See</u> Am. Compl. at 1-3[3] (claiming "[t]hey made lewd and degrading comments to plaintiff and literally badgered plaintiff by stating he had a small penis and other despicable remarks including

---

[3] The page numbers of the Amended Complaint refer to the number at the bottom of the page, and not to the filing page number.

remarks about Lim-Tom having a penis pump that he wanted to sell to the plaintiff"); Compl. ¶ 3 (alleging that a photograph of a nude man was distributed and that "sexually degrading comments [were made] about plaintiff's genitals and questioning plaintiff's sexual orientation, plaintiff is not gay"). Plaintiff concedes that Defendant conducted an investigation into his complaint of sexual harassment. (Am. Compl. at 2 -4.)

On August 31, 2012, Plaintiff "use[d] profanity against Mr. Douglas, was suspended indefinitely and placed under an investigation by human resources manager Orion DeChristopher." (Compl. ¶ 12.) Thereafter, Plaintiff's employment with Defendant was terminated because Plaintiff's "statement constituted a threat" and "plaintiff was in danger to [another worker at the Brooklyn Depot at which Plaintiff worked]." (Compl. ¶ 12.)

On January 8, 2013, Dingle executed a Settlement Agreement (the "Settlement Agreement") with the Defendant and the Bakery Confectionary, Tobacco Workers and Grain Millers International Union, Local No. 53 (the "Union"). Pursuant to the Settlement Agreement, Defendant paid Plaintiff valuable consideration in the monetary amount of $13,000, less statutory withholdings, ("Settlement Payment"), agreed Plaintiff's termination would be classified as a "resignation," and that it would not contest Plaintiff's application for unemployment benefits. In return for the valuable consideration, Plaintiff agreed to waive any rights to reemployment and executed a general release of claims. See Settlement Agreement, attached as Exh. A to the Affidavit of Kristin Witherell, Esq., attached as Exhibit 1 to the Memorandum of Law in Support of Defendant's Motion to Dismiss, Dingle II, Doc. No. 18 ("Settlement Agreement, Dingle II, Doc. No. 18"). Plaintiff acknowledges receiving payment from Defendant but opposes the manner of tax withholdings. (Compl. ¶ 15.)

## IV.    **PROCEDURAL HISTORY**

Plaintiff initiated the action referred to as Dingle I on or about June 14, 2011, asserting Title VII and defamation claims against Defendant.  On November 21, 2011, Defendant submitted the fully-briefed Motion to Dismiss.  On July 11, 2012, Chief Judge Carol Bagley Amon granted the Motion to Dismiss, with leave to amend.  On August 30, 2012, Plaintiff filed his Amended Complaint in Dingle I.  Liberally construing Plaintiff's Amended Complaint, it appears he purports to allege claims for: (1) Title VII hostile work environment, premised on the allegations that his co-workers sexually harassed him; and (2) Title VII retaliation, premised on the allegations that Defendant did not adequately address his complaints of sexual harassment, and instead retaliated against him.[4]

On July 12, 2013, Defendant removed the action referred to as Dingle II. Plaintiff alleges fundamentally the same set of facts in the instant action as he alleged in Dingle I, and further seeks greater payment under the Settlement Agreement.[5]  On July 23, 2013, Defendant filed its Motion to Dismiss in Dingle II.

On December 16, 2013, Magistrate Judge Pohorelsky issued his Report [Dingle I, Doc. No. 53; Dingle II, Doc. No. 24] recommending that Plaintiff's Amended Complaint and Complaint be dismissed in their entirety, without leave to replead.

---

[4] Plaintiff attempted to amend the Amended Complaint further and filed the Supplemental Amendments[4] on August 30, 2012, September 7, 2012 [Dingle I, Doc. No. 28] September 27, 2012, and November 9, 2012 (collectively, with the Amended Complaint, referred to as the "Amended Complaint").  In Plaintiff's supplemental filing dated August 30, 2012, he claims that "after he became upset and used profanity twice," he was suspended on August 29, 2012 for verbally abusing a coworker.  (First Supplement to Am. Compl.at 2.)  In a late filing on September 27, 2012, Plaintiff again attempted to amend the Amended Complaint by saying the Defendant breached its company policies and breached the collective bargaining agreement.  [See Dingle I, Doc. No. 31.]  In that amendment, Plaintiff also claimed he was "fired from his job based on the bogus hearsay statement." [See id.]  In another untimely filing on November 9, 2012, Plaintiff stated he is "requesting to add the claim Deliberate Indifference" be added to the Amended Complaint.  [See Dingle I, Doc. No. 37.]  On January 22, 2013, Defendant filed a fully briefed Motion to Dismiss directed to Plaintiff's Amended Complaint. [See Dingle I, Doc. Nos. 38-40, 42.]
[5] Plaintiff also commenced another related action, *Dingle, Jr. v. Bakery Confectionary, Tobacco Workers and Grain Millers International Union, Local No. 53*, Case No. 1:13-cv-04141-CBA-VVP.

## V.     THE REPORT SHOULD BE ADOPTED[6]

### A.     Relevant Standard

The Court may accept, reject or modify, in whole or in part, the findings and recommendations set forth within the Report.  28 U.S.C. § 636(b)(1)(C).  When there are objections to the report, the Court must make a de novo determination of those portions of the Report to which objections are made.  Id.  The district judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.  See Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(C).  The Court need not conduct a de novo hearing on the matter.  See United States v. Raddatz, 447 U.S. 667, 675-76 (1980).  Rather, it is sufficient that the Court "arrive at its own, independent conclusions" regarding those portions to which objections were made.  Nelson v. Smith, 618 F. Supp. 1186, 1189-90 (S.D.N.Y. 1985) (quoting Hernandez v. Estelle, 711 F.2d 619, 620 (5th Cir. 1983)).  The Court, however, "may adopt those portions of the Report to which no objections have been made and which are not facially erroneous."  La Torres v. Walker, 216 F. Supp. 2d 157, 159 (S.D.N.Y. 2000).  Moreover, "[w]hen a party makes only conclusory or general objections . . . the Court will review the Report strictly for clear error . . . . Objections to a Report must be specific and clearly aimed at particular findings in the magistrate judge's proposal."  Molefe v. KLM Royal Dutch Airlines, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009) (citations omitted).

The objections of parties appearing pro se are "generally accorded leniency" and should be construed "to raise the strongest arguments that they suggest."  Milano v. Astrue, No. 05-CV-6527, 2008 U.S. Dist. LEXIS 74488, at *24 (S.D.N.Y. Sept. 26, 2008)[7] (internal quotation marks omitted).  Nevertheless, "even a pro se party's objections to a Report must be

---

[6] As noted above, *supra* at II, the sections not specifically objected to by Plaintiff should be adopted by the Court.

[7] Unreported cases attached as Exhibit A.

specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument." Pinkney v. Progressive Home Health Servs., No. 06-CV-5023, 2008 U.S. Dist. LEXIS 55034, at *1 (S.D.N.Y. July 21, 2008) (internal quotations marks omitted).

  **B.**   **Defendant Did Not Breach the Settlement Agreement**

    **i.**   **Plaintiff's Settlement Payment was Properly Taxed**

  Plaintiff's reliance on the Supplemental Wage Payment section of the Internal Revenue Code is misplaced.  Plaintiff claims the "primary issue on this case is breach of contract, that is defendants improperly taxed plaintiffs [sic] settlement for $13,000 after arbitration for unlawful termination" and that "taxes must be taken in accordance with 26 C.F.R. Subd. 31.3402(g)(20090)."  (Oppn' at 2.)  As a preliminary matter, it is unclear exactly to which section of the Internal Revenue Code Plaintiff refers as "26 C.F.R. Subd. 31.3402(g)(20090)"; [8] however, section 31.3402(g)-1, "Supplemental Wage Payments," applies to withholding on supplemental wages in excess of $1,000,000; a special rule where aggregate withholding exemption exceeds wages paid; and vacation allowances - none of which appear to be present in the current matter.  As such, Plaintiff's argument that the Settlement Payment constitutes supplemental wages, which are taxed differently than regular wages, should be rejected.

  Likewise, Plaintiff's reference to Tyler v. Bethlehem Steel Corp., 958 F.2d 1176, 1178 (2d Cir. N.Y. 1992), is misleading, as the case specifically addressed damages assessed by a jury and not resolved by way of a fully executed settlement agreement.

---

[8] The Internal Revenue Code does not contain a section 31.3402(g).  Rather the sections are §§ 31.3402(g)-1, 31.3402(g)-2, and 31.3402(g)-3.

ii.     **Defendant Paid the Settlement Amount Consistent with the Terms of the Settlement Agreement**

Although Plaintiff bemoans the tax treatment of his Settlement Payment, it was paid in accordance with the express terms of the Settlement Agreement, which required payment "less usual statutory deductions," and was paid consistent with applicable law.  As such, dismissal was properly recommended for Plaintiff's claim for breach of the Settlement Agreement.[9]

As noted in the Report, "[u]nder the Federal Insurance Contributions Act, employers are obligated to collect taxes related to employees' wages and transmit them to the government.  26 U.S.C. §3102(a)."  Thus, even an adoption of Plaintiff's classification of the Settlement Payment as "front pay" still requires W-2 taxation treatment of the Settlement Proceeds.  As the Second Circuit detailed "we recently found—based on a similar examination of statutory remedies available under Title VII—that a plaintiff's jury award of front and back pay constituted 'wages' subject to [Federal Insurance Contributions Act] (FICA) taxes." Gerstenbluth v. Credit Suisse Sec. (USA) LLC, No. 12-4125-cv, 2013 U.S. App. LEXIS 17841, at *12 (2d Cir. 2013) (citing Noel v. N.Y. State Office of Mental Health Central N.Y. Psychiatric Ctr., 697 F.3d 209, 213-14 (2d Cir. 2012)).  The Report correctly highlights this point, "[w]hether construed as back pay or front pay . . . the payment is still subject to tax withholdings." (Report at 24.)

The Settlement Payment was paid consistent with the terms of the Settlement Agreement and applicable tax law.  As such, Plaintiff's Opposition should be rejected.

---

[9] Regarding Plaintiff's claim that the taxes are a bit high, Defendant incorporates by reference the reasoning in the Report and the Affidavit of Tracey Allen [Dingle II, Doc. 27].  Moreover, Plaintiff's claim that recovery after filing his tax returns would not "cause a further breach of the arbitration agreement."

**C.**    **Plaintiff Cannot Maintain his Federal and State Law Claims**

With respect to Plaintiff's claims under Federal and State law, he does not challenge the legal underpinnings of the Report, but is instead trying to get "a second bite at the apple" and litigate his prior arguments.

**i.**    **Retaliation under Title VII**

Plaintiff has not sufficiently stated a claim for retaliation as he has not alleged he engaged in any protected activity or any causal connection.

To plead a claim for retaliation in violation of Title VII, a plaintiff must plead facts that would tend to show that: (1) he participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging him; and (3) there exists a causal connection between the protected activity and the adverse action.  Horne v. Buffalo Police Benevolent Ass'n, No. 07-CV-781C, 2010 U.S. Dist. LEXIS 53152, at *23-24 (W.D.N.Y. May 25, 2010).

Plaintiff has failed to show that he participated in a protected activity *known to Defendant.*  The crux of Plaintiff's claim is that a photo allegedly resembling Plaintiff was passed around the Depot at which he worked.  Plaintiff also claims there was an issue with the brakes on his truck.  At most, these incidents amount only to general allegations of mistreatment or a personal animus by his coworkers and do not support an inference that plaintiff had a reasonable good faith belief that he was subject to sexual harassment.  See Drumm v. SUNY Geneseo College, 486 Fed. Appx. 912, 914 (2d Cir. N.Y. 2012).   Defendant cannot be expected to have understood Plaintiff to have been complaining about sexual harassment *based on sex* so as to constitute protected activity.  Fattoruso v. Hilton Grand Vacations Co., 525 Fed. Appx. 26, 28 (2d Cir. N.Y. 2013) ("Nor does Fattoruso's belief that he was being treated 'unfairly'

transform his complaints to Hilton into charges over unlawful discrimination . . .  Hilton cannot be expected to have understood Fattoruso to have been complaining about disparate treatment based on sex and therefore engaging in protected activity); Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998) ("[I]mplicit in the requirement that the employer have been aware of the protected activity is the requirement that it is understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII").  Because Plaintiff's complaints did not implicitly or explicitly alert Defendant that he was complaining of harassment based on sex - and thereby was engaging in a protected activity - Plaintiff fails to establish a prima facie case for retaliation under Title VII.

Nor is there a causal connection in this case; the gap between Plaintiff's complaint about the photograph and his termination is a span of three years.  (See Compl. ¶ 3; Goodman v. Port Auth. of N.Y. & N.J., No. 12-2329-JDT-cgc, 2013 U.S. Dist. LEXIS 134921, at *12 (S.D.N.Y. Sept. 18, 2013) (noting no causal connection existed when there was a two year span between the complaint and termination.))  Notably, Plaintiff's allegations prevent any connection between any claimed protected activity and claimed adverse action as Plaintiff has alleged, and repeats in his Opposition, that he was suspended (which resulted in his agreed upon resignation per the terms of the Agreement) because he used profanity toward a coworker, and further concedes he was terminated because his "statement constituted a threat and [the Company] claimed that plaintiff was in danger to [another worker at the Brooklyn Depot at which Plaintiff worked]."  (See Dingle II Compl.¶ 12; see also Opp'n at 4 (plaintiff "was suspended for using profanity against Douglas for telling him (Douglas) get the F…… out of a

room . . . .") As such, Plaintiff has failed to plead facts that tend to show a causal connection.[10]

Magistrate Pohorelsky properly recommended dismissal of Plaintiff's Title VII retaliation claim.

### ii. Emotional Distress

Plaintiff next claims that his "claim of emotion distress must be granted." Although, the complaints in both actions appear devoid of any clear claim for intentional infliction of emotional distress, Defendant addresses this argument below.

A claim for intentional infliction of emotional distress requires a showing of: (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress. Conboy v. AT&T Corp., 241 F.3d 242, 258 (2d Cir. 2001); Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999). Liability under this tort exists only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society. Stuto, 164 F.3d at 827.

The allegations in Plaintiff's Amended Complaint in Dingle I and his Complaint in Dingle II do not plausibly allege a course of conduct so extreme or outrageous as to be utterly intolerable in a civilized society. Here, Plaintiff's complaints relate to typical workplace frustrations, disagreements, and annoyances which are insufficient even to sustain his claim for Title VII discrimination. See Smith v. United States Army Corps of Eng'rs, 829 F. Supp. 2d 176, 184-185 (W.D.N.Y. 2011) (finding, "the conduct plaintiff endured consisted of insults,

---

[10] Defendant also claims: "Defendants agreed to settle and it must be recognized that no company is going to pay a settlement, nor recommendation to settle by an arbitration if there was no wrongdoing it is only logical that they would not have wanted to settle no would they have made no agreement." The Settlement Agreement specifically provides: "The payment provided in Paragraph 3 of this Settlement Agreement shall not be considered an admission of any liability or obligation by the Company." See Settlement Agreement, Dingle II, Doc. No. 18.

indignities, threats, annoyances, petty obsessions, or other trivialities which are not enough to create liability") (internal marks omitted) (citing in part Humphress v. United Postal Serv., Inc., 172 F.3d 48 (6th Cir. 1998), cert. denied, 526 U.S. 1099 (1999) (finding the "threshold of outrageousness was not met where plaintiff, after filing a labor grievance, was subject to a 'campaign of harassment' by his co-workers including (1) finding grease placed on various parts of his work truck where it did not belong, (2) discovering obscenity written on his truck windshield, and (3) discovering that a picture of his daughter he kept at work was defaced"); Roscoe v. Hastings, 999 So.2d 1218, 1221-1222 (La.App. 2nd Cir. 2009) (supervisor's conduct not extreme and outrageous where he made "graphic sexual comments to her, remarked on her relationship with her husband, called her a b— on numerous occasions, and allowed co-employees to make derogatory remarks to her"); Beaudoin v. Hartford Acci. & Indem. Co., 594 So. 2d 1049, 1050 (La.App. 3rd Cir. 1992) (employer's conduct not extreme and outrageous where he "constantly raised his voice to her, cursed, called her names such as dumb and stupid, went into violent, screaming rages, and made statements about her appearance, such as calling her fat")).

Even construing the allegations pertaining to the nude photograph as "extreme and outrageous," as Magistrate Pohorelsky noted, Plaintiff's claim is barred by the applicable one-year statute of limitations; the photograph was circulated in March 2010, approximately fifteen months before Plaintiff commenced suit in June 2012. (See Report at 27.)

Finally, contrary to Plaintiff's arguments, his coworkers were not agents of the company for purposes of imposing liability for this claim. "As a general rule, employers are held vicariously liable for their employees' torts only to the extent that the underlying acts were within the scope of the employment." Adams v. New York City Transit Auth., 88 N.Y.2d 116,

666 N.E.2d 216, 218, 643 N.Y.S.2d 511 (N.Y. 1996) (citing references omitted).   There is nothing on the face of the complaint which indicates that the actions of Plaintiff's colleagues were within the scope of their employment.

The Magistrate's conclusion, that any claim for intentional infliction of emotional distress would be without merit, should be adopted.

### iii.   Hostile Work Environment

Plaintiff has failed to plead conduct that is either sufficiently severe or pervasive to amount to a hostile work environment.   The crux of Plaintiff's claim is that a single photograph depicting a nude male resembling Plaintiff was circulated throughout the Depot; however, in his Opposition, Plaintiff also focuses on an issue with truck brakes and that coworkers placed blame on Plaintiff for having to cover his shift during his suspension.

These allegations are "insufficient to state a plausible claim that [Plaintiff's] workplace was so 'permeated with discriminatory intimidation, ridicule and insult' so as to alter the conditions of his employment." See Smith v. HBO, No. 12-CV-2177 (MKB), 2013 U.S. Dist. LEXIS 73333, at *10-12 (E.D.N.Y. May 22, 2013) (relying in part on Deras v. Metro. Transp. Auth., No. 11-CV-5912, 2013 U.S. Dist. LEXIS 40456, at *8 (E.D.N.Y. Mar. 22, 2013) (finding plaintiff's allegations of five separate incidents spanning four and half years were "insufficient to state a plausible claim that [the plaintiff's] workplace was so 'permeated with discriminatory intimidation, ridicule, and insult' so as to alter the conditions of his employment"); Chukwueze v. NYCERS, 891 F. Supp. 2d 443, 445 (S.D.N.Y. 2012) (granting motion to dismiss where plaintiff alleged three incidents over the course of a year where he was chastised and berated in front of his coworkers because they "represent 'episodic' instances of 'mere offensive utterance[s]' and thus are neither severe nor pervasive enough to alter the conditions of his work

environment" (alteration in original) (citations omitted)).

"[C]ourts have held that personality conflicts at work that generate antipathy and snubbing by supervisors and co-workers are not actionable under [Title VII]." Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 68 (U.S. 2006) (citing reference and internal marks omitted); see also EEOC v. Bloomberg L.P., No. 07 Civ. 8383 (LAP), 2013 U.S. Dist. LEXIS 128388, at *57-58 (S.D.N.Y. Sept. 9, 2013) ("being yelled at, misled, publicly reprimanded, and condescended to generally represent examples of 'petty slights, minor annoyances, and simple lack of good manners' that may be covered by an employer's own civility code but are not actionable via Title VII and the NYSHR. This claim must be dismissed") (quoting Burlington, 548 U.S. at 68) (internal quotation marks and citation omitted); Kurian v. Forest Hills Hosp. 10201 66th Rd, No. 12-CV-4539 (ADS) (GRB), 2013 U.S. Dist. LEXIS 99120, at *19-20 (E.D.N.Y. July 15, 2013); see also Martinez v. N.Y.C. Dep't of Educ., No. 04-CIV-2728 (LTS)(DFE), 2008 U.S. Dist. LEXIS 41454, at *12 (S.D.N.Y. May 27, 2008) ("[I]ncidents where [a supervisor] publicly yelled at [the plaintiff] for various reasons or called him 'shit' . . . constitute, as a matter of law, the sorts of petty slights and personality conflicts that are not actionable"). As Plaintiff's complaints plead nothing more than a personality conflict at work, he cannot sustain his claim under Title VII. Accordingly, the Magistrate's recommendation should be adopted for this claim.

### iv. Discrimination and Retaliation Claim Based on Criminal Conviction

On a stray page of the Complaint in Dingle II, Plaintiff attempts to allege a violation of "Title 8 of the NY City Administrative Code and a violation of NY Corr. Law

Article 23-4." (Compl. at 26.)[11] Plaintiff has not adequately pled a claim of discrimination or retaliation based on his criminal conviction.

In order to make out a claim for discrimination retaliation, a plaintiff must show that (1) [he] was engaged in protected activity, (2) [his] employer was aware that she participated in such activity, (3) [he] suffered an adverse employment action based upon [his] activity, and (4) there is a casual connection between the protected activity and the adverse action. See e.g., Forrest v. Jewish Guild for the Blind, 786 N.Y.S.2d 382, (2004); Hernandez v. Bankers Trust Co., 773 N.Y.S.2d 35 (2004); Pace v. Ogden Servs. Corp., 692 N.Y.S.2d 220 (1999)).

In proffered support of these attempted claims, Plaintiff alleges in his Complaint that Rina Carpano "presented a copy of his criminal record, stating, 'we didn't know about this when you were hired, forget the whole thing and we will let you keep your job.'" (Compl. at 26.) Nowhere in the Complaint has Plaintiff alleged there was an adverse action related to his criminal record; to the contrary, Plaintiff alleges that he was permitted to retain his employment despite his criminal record. See Quinones v. Eihab Human Services, Inc., No. 150169-08, 2009 N.Y. Misc. LEXIS 5729 (N.Y. Sup. Ct. May 22, 2009), at *8 ("the human rights law does not erode an employer's right to decide whether an employee should be fired, provided there is no discriminatory motive for the firing").

In his Opposition, in an attempt to replead his claim, Plaintiff now states his employment was terminated because of his criminal conviction. In addition, Plaintiff details that Ms. Carpano learned of his conviction while discussing events surrounding the nude photograph. However, as with Plaintiff's other claims, Plaintiff has not alleged any facts tending to establish a causal link between any protected activity and his termination. The events concerning the

---

[11] The portion of Plaintiff's Complaint is not contained in numbered paragraphs and does not have a page number. As such, the page number refers to the page number in Defendant's Notice of Removal [Doc. No. 1].

photograph occurred over three years prior to Plaintiff's termination – as noted above, the time span far exceeding the temporal proximity accepted by courts.  See, e.g., Yarde v. Good Samaritan Hosp., 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005) ("Three months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation.").  Indeed, according to Plaintiff's allegations, the photograph was circulated in March 2010; Plaintiff made a complaint in April 2010; Plaintiff had a one-day suspension and was required to complete anger management training in May 2010.  Thus, Plaintiff fails to allege any facts that connect his termination to his criminal conviction.  See Anand v. New York State Dep't of Taxation & Fin., No. 10-CV-5142 (SJF)(WDW), 2013 U.S. Dist. LEXIS 104291, at *11-12 (E.D.N.Y. July 25, 2013) ("It appears that plaintiff alleges that Macchio and Varghese asked him about his retirement plans two (2) years prior to the promotion interview in 2009 . . . and defendants are correct that the discussion of retirement plans, particularly when the conversation is remote from the allegedly discriminatory conduct, does not constitute evidence of discriminatory intent.").

As such, Plaintiff's claims related to his criminal conviction must be dismissed.

## VI.   <u>CONCLUSION</u>

Based on the foregoing, Defendant respectfully requests that the Report issued by Magistrate Judge Viktor V. Pohorelsky be adopted, and that Plaintiff's Amended Complaint in Dingle I and Complaint in Dingle II be dismissed in their entirety, with prejudice, without leave to amend.

Dated:  New York, New York
        February 19, 2013

Respectfully submitted,

JACKSON LEWIS P.C.
*ATTORNEYS FOR DEFENDANT*, named as
BIMBO BAKERIES USA
ENTENMANN'S/BIMBO BAKERIES USA

666 Third Avenue, 29th Floor
New York, New York 10017
(212) 545-4000
(212) 972-3213 (Fax)
fischera@jacksonlewis.com
witherek@jacksonlewis.com

*/s/ Kristin L. Witherell*
A. Robert Fischer (AF 2934)
Kristin L. Witherell (KP4769)

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 19th day of February 2014, I caused a true and correct copy of the enclosed Defendant's Memorandum of Law in Response to Plaintiff's Opposition to the Magistrate's Report with exhibit, to be served upon Plaintiff, via U.S. Mail, addressed to:

ROBERT DINGLE, JR.
115-51 217th Street
Cambria Heights, NY 11411
*Plaintiff Pro Se*

*/s/ Kristin L. Witherell*
Kristin L. Witherell

4811-4450-5880, v. 2

17